**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

UNITED STATES OF AMERICA and
THE STATE OF COLORADO,

        *Plaintiffs*,

v.

CITY OF COLORADO SPRINGS, COLORADO

        *Defendant*.

---

## COMPLAINT

---

The United States of America, by authority of the Attorney General and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Colorado, acting at the request and on behalf of the Colorado Department of Public Health and Environment ("State") (collectively "Plaintiffs"), allege:

<u>NATURE OF ACTION</u>

1.      This is a civil action for injunctive relief and civil penalties brought against the City of Colorado Springs, Colorado (the "City") pursuant to Sections 309(b) and (d) of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. §§ 1319(b) and (d), and the Colorado Water Quality Control Act ("CWQCA"), §§ 25-8-101 <u>et seq</u>. C.R.S.

2.      Plaintiffs allege that the City has violated the Clean Water Act and Colorado Water Quality Control Act by failing to comply with the terms and conditions of the City's

National Pollutant Discharge Elimination System ("NPDES") permit issued by the State of

Colorado under Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b), for discharges of

stormwater from the City's municipal separate storm sewer system ("MS4").

<u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331 (Federal Question), 1345

(United States as Plaintiff), 1355 (Fine, Penalty, or Forfeiture) and 1367 (supplemental

jurisdiction over State claims).

4.      Venue lies in this District pursuant to 33 U.S.C. § 1319(b), 28 U.S.C. §§ 1391(b)

and (c), and 28 U.S.C. § 1395, because the City and its MS4 are located in this District, the

claims in this lawsuit arose in this District, and the acts for which Plaintiffs seek relief occurred

in this District.

5.      Notice of the commencement of this action has been provided to the State in

accordance with 33 U.S.C. § 1319(b).

6.      The State has joined this action as a plaintiff, thereby satisfying the requirements

of 33 U.S.C. § 1319(e).

<u>DEFENDANT</u>

7.      The City is a political subdivision of the State of Colorado and a "municipality"

as defined in 33 U.S.C. § 1362(4).

8.      The City is a "person" within the meaning of 33 U.S.C. § 1362(5).

9.      The City owns and operates a municipal separate storm sewer system, commonly

known as an MS4.

<u>STATUTORY AND REGULATORY BACKGROUND</u>

**Clean Water Act NPDES Program**

10.      Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters, except those discharges that are in compliance with other specifically-enumerated sections of the Act, including Section 402, 33 U.S.C. § 1342.

11.      Under Section 402(a) of the Act, 33 U.S.C. § 1342(a), EPA may issue NPDES permits that authorize discharges of pollutants into waters of the United States, subject to conditions and limitations set forth in such permits.

12.      A state may establish its own NPDES program and, after receiving EPA approval, issue NPDES permits.  33 U.S.C. § 1342(b).  The State of Colorado has been authorized to administer the NPDES program in Colorado since March 27, 1975.  40 Fed. Reg. 16713 (April 14, 1975).

13.      When a state is authorized to administer a NPDES permit program pursuant to Section 402(b) of the Act, 33 U.S.C. § 1342(b), EPA retains concurrent authority to enforce state issued permits.  33 U.S.C. §§ 1319, 1342(i).

14.      Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Section 301(a) of the Act, 33 U.S.C. § 1311(a), or a permit condition or limitation in a permit issued by EPA or a state under an approved permit program pursuant to Section 402 of the Act, 33 U.S.C. §1342; <u>see also</u> 33 U.S.C. § 1319(a)(1).

15.      Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4 establish maximum civil penalties for violations of the CWA, including violations of any condition or

limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  The

maximum civil penalty per day per violation of the CWA is $37,500 for violations occurring on

or before November 2, 2015, and effective August 1, 2016, $51,570 per day per violation of the

CWA for violations occurring after November 2, 2015.  See 40 C.F.R. § 19.4 (Table 2).  For

violations occurring prior to January 12, 2009, lower penalty amounts apply.  See 40 C.F.R. §

19.4 (Table 1).

### Clean Water Act Stormwater Discharge Program

16.    Stormwater runoff is generated when precipitation from rain and snowmelt events

flow over land or impervious surfaces and does not percolate into the ground.  As the runoff

flows over land or impervious surfaces (paved streets, parking lots, and building rooftops), it

accumulates debris, chemicals, sediment or other pollutants that can adversely affect water

quality, erode streambanks, destroy needed habitat for fish and other aquatic life, and make it

more difficult and expensive for downstream users to effectively use the water.

17.    Most stormwater dischargers, including municipalities, are considered point

sources of pollution and require coverage under a NPDES permit.

18.    Sections 402(p)(4)(A) and (B) of the Act, 33 U.S.C. § 1342(p)(4)(A) and (B),

establish schedules for issuance of NPDES permits for stormwater discharges from MS4s

serving populations of 100,000 people or more.  See also 40 C.F.R. § 122.26(a)(3).

19.    The Act provides that all permits for discharges from MS4s "shall require controls

to reduce the discharge of pollutants to the maximum extent practicable, including best

management practices ["BMPs"], control techniques and system, design and engineering

methods, and such other provisions as the [EPA] or the State determines appropriate for control of such pollutants."  33 U.S.C. § 1342(p)(3)(B)(iii).

20.     Phase I regulations governing the stormwater program were published on November 16, 1990, and are set forth in 40 C.F.R. § 122.26.  55 Fed. Reg. 47990 (Nov. 16, 1990).  Phase I regulates storm water discharges from medium and large MS4s, among other entities.  Id.

21.     The regulations define "municipal separate storm sewer" as "a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains) . . . [o]wned or operated by a . . . city . . . [and] [d]esigned or used for collecting or conveying storm water . . . ."  40 C.F.R. § 122.26(b)(8).

22.     The regulations require that applicants for NPDES permits for stormwater discharges from MS4s propose a Stormwater Management Program designed "to reduce the discharge of pollutants to the maximum extent practicable."  40 C.F.R. § 122.26(d)(2)(iv).

23.     The regulations define BMPs as "schedules of activities, prohibition of practices, maintenance procedures, and other management practices to prevent or reduce the pollution of 'waters of the United States.'  BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage."  40 C.F.R.  § 122.2.

GENERAL ALLEGATIONS

**The City's Municipal Separate Storm Sewer System (MS4)**

24.     The City owns and operates a municipal separate storm sewer system within the meaning of Section 402(p)(2) of the Act, 33 U.S.C. § 1342(p)(2), and 40 C.F.R. § 122.26(b)(8).

25.     The City is a Phase I MS4 because it serves a population of 100,000 or more.  As of July 1, 2015, the U.S. Census Bureau estimates that the population of the City of Colorado Springs, Colorado, is 456,568 people.

26.     When the Phase I stormwater program identifications for medium and large municipalities were made, they were based upon the 1990 Decennial Census by the Bureau of the Census.  55 Fed. Reg. 47990 (Nov. 16, 1990).  At that time, the City was identified as a "medium" MS4 because it served a population of more than 100,000 people but less than 250,000.  40 C.F.R. § 122.26(b)(7)(i) at Appendix G.

27.     The City's MS4 includes all conveyances owned or operated by the City that are designed or used for collecting or conveying stormwater (with the exception of combined sewers and Publicly Owned Treatment Works ("POTW")).  5 C.C.R. § 1002-61.2(62).  The MS4 includes but is not necessarily limited to, roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, and storm drains.  Id.

28.     The City's MS4 discharges to Monument Creek, Fountain Creek, Camp Creek, Cheyenne Creek, and Shooks Run, among other waters, within the Arkansas River watershed.

29.     All of these waters are State waters.  State waters are "any and all surface and subsurface waters which are contained in or flow in or through this state," except for "waters in sewage systems, waters in treatment works of disposal systems, waters in potable water

6

distribution systems, and all water withdrawn for use until use and treatment have been completed." Colorado Water Quality Control Act, § 25-8-103(19), C.R.S.

30.     Fountain Creek, Monument Creek, and other waters receiving the City's MS4 discharges are perennial tributaries that flow into the Arkansas River. The Arkansas River is a "navigable water" and a "waters of the United States" under 33 U.S.C. § 1362(7) and 40 C.F.R. § 122.2.

31.     Discharges from the City's MS4 constitute the "discharge(s)" of "pollutants" from a "point source" to "navigable waters" within the meaning of Sections 502(12), (6), (14), and (7) of the Act, 33 U.S.C. § 1362(12), (6), (14), and (7).

### The City's MS4 Permit

32.     The City has a current NPDES Permit for its MS4 (hereinafter "City's Permit" or "Permit") issued by the State through the Colorado Discharge Permit System ("CDPS"), and identified numerically as Permit No. COS-000004. The Permit was effective November 1, 2011 through October 31, 2016, and has been administratively extended.

33.     Prior to November 1, 2011, the City's MS4 permit also was identified as Permit No. COS-000004, effective March 4, 2004 through February 28, 2009, and administratively extended until the November 1, 2011 ("2004 Permit"). The City's first MS4 permit was issued in 1997 and likewise identified as Permit No. Permit COS-000004, effective October 12, 1997 through September 30, 2002, and administratively extended until March 4, 2004 ("1997 Permit").

34.     The City's Permit requires it to develop, implement, and enforce a CDPS Stormwater Management Program ("SMP"), among other provisions. Permit, Part I.B. All

7

permitted discharges must be in accordance with the approved SMP and other provisions set forth in the Permit.  Permit, Part. I.A.1.

35.     An effective SMP is critical to compliance with the City's Permit.  An SMP that does not adequately control stormwater runoff can result in significant discharges of pollutants, including large amounts of sediment, into State waters and subsequent degradation of those waters.

36.     The SMP includes five program areas to be implemented by the City: (1) Commercial/Residential Management Program; (2) Illicit Discharges Management Program; (3) Industrial Facilities Program; (4) Construction Sites Program; and (5) Pollution Prevention/Good Housekeeping for Municipal Operations.  Permit, Part I.B.1.a.-e.

37.     The SMP must be "designed to reduce the discharge of pollutants from the MS4 to the 'maximum extent practicable' ["MEP"], to protect water quality, and to satisfy the appropriate water quality requirements" of the Colorado Water Quality Control Act, CRS § 25-8-101 et seq., and the Colorado Discharge Permit Regulation 61.  Permit, Part I.B.

38.     Implementation of BMPs consistent with the provisions of the SMP and the other requirements in the City's Permit constitutes compliance with the standard of reducing pollutants to the MEP.  Permit, Part I.B.

39.     The City has developed a number of documents that together constitute the City's SMP, including but not limited to the City of Colorado Springs Municipal Code §§ 3.8.101 et seq. (Stormwater Quality Management and Discharge Control Code); and §§ 7.7.1501 et seq. (Grading Plans and Erosion and Stormwater Quality Control Plans) (in particular §§ 7.7.906 et seq.); the CDPS MS4 Colorado Springs COR-000004 Program Descriptions document (March

20, 2012); the O&M Program Procedures document (January 2013) ("O&M Program

Procedures"); and the City's Drainage Criteria Manual - Volume 2 ("DCM Vol. 2").

40.     When the City fails to act in accordance with its SMP, the City is in violation of

its Permit because the City is not operating in accordance with the approved SMP and other

provisions set forth in the Permit.  Permit, Part I.A.1; Permit, Part I.B.1, Part I.E., and Part II.B.8.

41.     The City's MS4 was audited for compliance with its Permit by the EPA and the

State of Colorado on February 4-7, 2013 ("2013 Audit").

42.     The EPA and its contractor, PG Environmental, LLC, conducted a follow up

inspection of the City's MS4 for compliance with its Permit on August 18-19, 2015 ("2015

Inspection").

## FIRST CLAIM FOR RELIEF
### (Stormwater Management Program Requirements)

43.     The allegations of the foregoing paragraphs are incorporated herein by reference.

44.     The City is required to develop and implement a SMP.  Permit, Part I.B.

45.     The City is required to "provide adequate finances, staff, equipment, and support

capabilities to implement the CDPS Stormwater Management Program."  Permit, Part I.B.3.

46.     The City is required to "at all times properly operate and maintain all facilities

and systems of treatment and control (and related appurtenances) which are installed or used by

the permittee to achieve compliance with the conditions of this permit.  Proper operation and

maintenance includes effective performance, adequate funding, adequate operator staffing and

training, and adequate laboratory process controls, including appropriate quality assurance

procedures."  Permit, Part II.A.7.

47.     Pursuant to these requirements, the City must "take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or environment."  Permit, Part II.A.8.

48.     The City's 2004 Permit and 1997 Permit had similar requirements related to the development and implementation of a SMP, including providing adequate resources, and the duty to prevent adverse impacts to human health or environment.  2004 Permit, Part I.B.1 and 3; 2004 Permit, Part II.A.2 and 3; 1997 Permit, Part I.B.1 and 3; 1997 Permit, Part II.A.2. and 3.

49.     On November 22, 2005, the Colorado Springs City Council established the Stormwater Enterprise by Ordinance No. 05-192, creating a new Article 8 (Stormwater Enterprise) of Chapter 14 (Municipal Enterprise) of the City of Colorado Springs Municipal Code.  City Ord. No. 05-192; City Code §§ 14.8.101 et seq.

50.     On November 14, 2006, the Colorado Springs City Council established fees for the Stormwater Enterprise by passing Resolution No. 193-06, and later revised the fee structure on August 28, 2007, by passing Resolution No. 152-07.  City Res. No. 193-06; City Res. No. 152-07.

51.     On December 8, 2009, the Colorado Springs City Council passed Resolution No. 299-09, which phased out stormwater service fees used to fund the Stormwater Enterprise.  City Res. No. 299-09 at Exhibit A.  Starting January 1, 2010, the monthly stormwater fee previously assessed to various property owners and businesses was set at "$0.00."  Id.

52.     On July 20, 2016, the City released a draft version of the Stormwater Program Implementation Plan ("Draft SwPIP"), which states that the City has created a separate Stormwater Division within its Public Works Department and that the number of staff dedicated

10

to stormwater work, including operation and maintenance, will increase to 65 Full-Time

Equivalents ("FTEs") by the end of 2017.  Draft SwPIP at p. 2.

53.    The City estimates that stormwater program costs from 2016-2025, including

operation and maintenance, will require an average of $7.8 million annually when fully staffed.

Draft SwPIP at p. 29.

54.    These numbers contrast starkly with City-funded expenditures on stormwater,

including operation and maintenance, after 2009 when the stormwater service fees under the

Stormwater Enterprise ("SWENT") were phased out.

55.    From 2011 through 2014, the amount of City-funded stormwater program

expenditures, including operation and maintenance and personnel costs, averaged $1,603,526 per

year.  Actual expenditures for 2015 were not included in the 2015 Annual Report from the City

to CDPHE.  City of Colorado Springs, Annual MS4 Reports 2011-2015.

56.    The number of staff dedicated to stormwater work, including operation and

maintenance, averaged only 9 FTEs for the same years 2011-2014.  City's Response (April 22,

2016) to EPA's Information Request Letter (March 29, 2016) at Question 15.

57.    Since at least 2009, the City has failed to provide adequate resources to

implement the SMP and other provisions of the Permit, and to properly operate and maintain

facilities used to achieve compliance with Permit conditions.  Permit, Part I.B. and I.B.3; Permit,

Part II.A.7; 2004 Permit, Part I.B.1 and 3; 2004 Permit, Part II.A.3.

58.    This shortfall in resources forms the basis for the majority of the other violations

set forth in the Complaint and has led to discharges from the City's MS4 that are not in

compliance with the SMP.  See e.g. Seventh Claim for Relief at ¶¶ 184-202.  Wright Water

Engineers, Inc. concluded that sediment deposition along Fountain Creek between the cities of Fountain and Pueblo increased by 295,000 tons per year after 1980. See http://county.pueblo.org/fountain-creek-watershed (presentation to Pueblo County Commissioners dated August 14, 2015 at Part 2, p. 61).

59.     By failing to provide adequate resources to implement the SMP and other provisions of the Permit since at least 2009, and to properly operate and maintain facilities used to achieve compliance with Permit conditions, the City has allowed discharges that are not in accordance with the SMP and other provisions of the Permit, violating Part I.A.1 of its Permit. Permit, Part I.A.1; 2004 Permit, Part I.A.1.

60.     By failing to provide adequate resources to implement the SMP and other provisions of the Permit, and to properly operate and maintain facilities used to achieve compliance with Permit conditions, the City also has failed to minimize the adverse impacts to human health or the environment. Permit, Part II.A.8; 2004 Permit, Part II.A.2; 1997 Permit, Part II.A.2.

61.     Unless enjoined, the City's violations will continue.

62.     Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

## SECOND CLAIM FOR RELIEF
### (Adoption of 2000 Cottonwood Creek DBPS and "Prudent Line" Concept)

63.     The allegations of the foregoing paragraphs are incorporated herein by reference.

64.     The City is required to implement and enforce the SMP's Commercial/Residential Management Program. Permit, Part I.B.1.a.

65.     The Commercial/Residential Program requires that the City properly manage and regulate runoff from new development and redevelopment.  Permit, Part I.B.1.a.(2).  "The permittee must implement and enforce a program to address stormwater runoff from projects for which construction activities disturb greater than or equal to one acre, including projects that are less than one acre that are part of a larger common plan of development or sale that discharge into the MS4."  Id.

66.      "The program must ensure that controls are in place that would prevent or minimize water quality impacts."  Permit, Part I.B.1.a.(2).

67.     The Permit requires that "[m]inimum technical requirements for required structural BMPs shall be documented and be based on those specified in the Drainage Criteria Manual Volume II or equivalent and be in accordance with good engineering, hydrologic and pollution control practices; [u]se an ordinance or other regulatory mechanism to address post-construction runoff from projects . . . [i]mplement and document procedures to determine if the BMPs required under Item (a), above, are designed and installed in accordance with program requirements . . . ."  Permit, Part I.B.1.a.(2)(a) to (c).

68.     The Permit requires that the City "shall continue to implement procedures to assure that the impact on water quality is assessed for proposed flood management projects."  Permit, Part I.B.1.a.(3).

69.     The City is required to "take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or environment."  Permit, Part II.A.8.

70.     The City's 2004 Permit and 1997 Permit had similar requirements related to new development and post-construction controls to properly manage stormwater runoff and to prevent or minimize water quality impacts, assessment of water quality impacts from flood control projects, and minimization of adverse impacts to human health or the environment.  2004 Permit, Part I.B.1.b. and Part II.A.2.; 1997 Permit, Part I.B.1.b. and Part II.A.2.

71.     The City is required to use "ordinance or other regulatory mechanism to address post-construction runoff from projects and to implement the requirements of this section, I.B.1.a.(2), to the extent allowable under State or local law."  Permit, Part I.B.1.a.(2)(b) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2.

72.     The City of Colorado Springs Municipal Code further requires that "[a]ll stormwater quality requirements, including best management practices (BMPs), policies and procedures must be complied with as outlined in the 'Drainage Criterial Manual, Volume II." City Code § 7.7.906 B; see also City Code §§ 7.7.1502 and 7.3.508 F.4 (addressing exemption to stormwater quality requirements for Streamside Overlay zone sites with a "prudent line" setback under certain circumstances).

73.     The DCM Vol. 2 explains that water quality is impacted both by changes in stream morphology and by pollutants in the stormwater:  "Water quality is impacted through urbanization as a result of erosion during construction, changes in stream morphology, and washing off of accumulated deposits on the urban landscape.  Water quality problems include turbid water, nutrient enrichment, bacterial contamination, organic matter loads, metals, salts, temperature increases and increased trash and debris."  DCM Vol. 2 (2002) at 2-1; DCM Vol. 2 (2014) at 1-2.

14

74.    The DCM Vol. 2 explains that the stream morphology and therefore water quality is impacted by changes in the stream hydrology:  "When the hydrology of the stream changes, it results in changes to the physical characteristics of the stream.  Such changes include streambed degradation, stream widening, and streambank erosion.  As the stream profile degrades and the stream tries to widen to accommodate higher flows, instream bank erosion increases along with increases in sediment loads.  These changes in the stream bed also result in change to the habitat of aquatic life."  DCM Vol. 2 (2002) at 2-1; DCM Vol. 2 (2014) at 1-2.

75.    The DCM Vol. 2 Vol. 2 explains that the stream hydrology and, therefore, stream morphology and water quality is directly impacted by changes in stream flows resulting from urban development and stormwater runoff:  "Urban development affects the environment through changes in the size and frequency of storm runoff events, changes in the base flows of the stream and changes in stream flow velocities during storms results in decrease in travel time for runoff.  Peak discharges in a stream can increase from urbanization due to decrease in infiltration of rainfall into the ground, loss of buffering vegetation and resultant reduced evapotranspiration.  This results in more surface runoff and larger loads of various constituents found in stormwater."  DMC Vol. 2 (2002) at 2-1 and DCM Vol. 2 (2014) at 1-2.

76.    Both DCM Vol. 2 (2002) and DCM Vol. 2 (2014) require the use of a Four-Step Process for selecting structural BMPs in newly developing and redeveloping urban areas: Step 1-Employ Runoff Reduction Practices; Step 2-Stabilize Drainageways; Step 3-Provide Water Quality Capture Volume ("WQCV"); and Step 4-Consider Need for Industrial and Commercial BMPs.  DCM Vol. 2 (2002) at 4-3 to 4-4; DCM Vol. 2 (2014) at 1-8 to 1-14 (Step 1-Employ Runoff Reduction Practices; Step 2-Implement BMPs That Provide a Water Quality Capture

15

Volume with Slow Release; Step 3-Stabilize Drainageways; Step 4-Implement Site Specific Other Source Control BMPs).

77.     Directly reducing impacts to stream morphology and, therefore, water quality is the goal of Step 2-Stabilize Drainageways, as explained in the DCM Vol. 2 (2002): "Drainageway, natural and manmade, erosion can be a major source of sediment and associated constituents, such as phosphorous.  Natural drainageways are often subject to bed and bank erosion when urbanizing areas increase the frequency, rate and volume of runoff.  Therefore, drainageways are required to be stabilized."  DCM Vol. 2 (2002) at 4-3; DCM Vol. 2 (2014) at 1-13 (Step 3-Stabilize Drainageways).

78.     The DCM Vol. 2 (2014) further explains that drainageway stabilization is accomplished by construction undertaken by the developer of a project or through drainage fees paid by the developer:  "All new and re-development projects are required to construct or participate in the funding of the construction of the channel stabilization measures required by the applicable [drainage basin planning study] or master plan or needed to ensure channel stability."  DCM. Vol. 2 (2014) at 1-13.

79.     The City uses a Drainage Basin Planning Study ("DBPS") "to define major stormwater improvement needs in the City.  Each DBPS identifies needed improvements, environmental impacts and estimated costs.  The needs may be located in older, existing developed areas, that are City responsibility, or areas to be developed that developers will be responsible for.  The City has master plans for approximately 30 major drainage basins."  See https://coloradosprings.gov/stormwater/page/stormwater-drainage .

80.     The City of Colorado Springs Municipal Code requires that when a development is subdivided into smaller parts, "the subdivider shall . . . prepare a drainage report which shall show the channels, conduits, detention/retention basins, culverts, bridges, easements and all other drainage facilities for the control and drainage of surface water including the control of stormwater quality within the subdivision, or the part to be approved, and the carriage of water to a safe discharge or outflow point, all in conformity with the Drainage Basin Planning Study (DBPS) as approved by the City, together with the estimated cost of constructing these facilities."  City Code § 7.7.906 A.

81.     In 2000, the City adopted the amended Cottonwood Creek Drainage Basin Planning Study, including the "prudent line" concept for drainage and development of the basin. City Council Res. No. 104-00; Cottonwood Creek Drainage Basin Planning Study (June 2000) (hereinafter "Cottonwood Creek DBPS").

82.     The City of Colorado Springs Municipal Code defines "prudent line" as "a buffer zone for erosion and flooding potential within which development would not be considered prudent if the channel were to remain in a natural state."  City Code § 7.3.508 B.

83.     The Cottonwood Creek DBPS adopted by the City in 2000 amended an earlier version of the document.  City Council Res. No. 104-00; Cottonwood Creek DBPS at v.  The 1994 Cottonwood Creek DBPS recommended construction of six regional detention ponds and continuous structural measures (riprap and drop structures), among other BMPs, to reduce velocities and stabilize the Cottonwood Creek channel.  Id.

84.     The Cottonwood Creek DBPS changed the way that the City managed drainage and development issues in the Cottonwood Creek basin.  It eliminated the use of various BMPs

17

as set forth in the 1994 version of the document, and instead adopted an "erosion risk buffer concept, referred to as the prudent line, as the selected alternative for managing drainage issues in the Cottonwood Creek drainage basin." Cottonwood Creek DBPS at iv.

85.     Specifically, the adoption of the Cottonwood Creek DBPS resulted in the elimination of the originally-proposed six regional detention basins and continuous structural measures (such as riprap and drop structures) to reduce velocities and stabilize the channel. Cottonwood Creek DBPS at v.  Rather, the Cottonwood Creek DBPS adopted a "prudent line [that] defines a buffer zone for erosion and flooding potential within which development would not be considered prudent if the channel is to remain in a natural state.  The basic concept is to trade the cost of land adjacent to the channel (to provide room for the channel to move laterally) with the cost of channel stabilization alternatives that fix the channel in place." Cottonwood Creek DBPS at 3.1.

86.     The Cottonwood Creek DBPS estimated "[a] total cost reduction of approximately $11.4 million (January 1992 dollars)" by eliminating the proposed detention ponds and associated fees, and reducing the Cottonwood Creek Drainage and Bridge Fees. Cottonwood Creek DBPS at v.

87.     Upon information and belief, the City is updating and revising the Cottonwood Creek Drainage Basin Planning Study.

88.     The adoption and continuing use by the City of the Cottonwood Creek DBPS and the "prudent line" concept is a violation of the City's Permit.  Permit, Part I.B.1.a.; 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

89.     The adoption and continuing use by the City of the Cottonwood Creek DBPS and the "prudent line" concept is a violation of the City's Permit requirement to implement the DCM. Permit, Part I.B.1.a.(2)(a).; 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

90.     The adoption and continuing use by the City of the Cottonwood Creek DBPS and the "prudent line" concept is a violation of the requirements of the DCM Vol. 2 to stabilize drainageways.  DCM Vol. 2 (2002) at 4-3 to 4-4; DCM Vol. 2 (2014) at 1-13 to 1-14.

91.     The adoption and continuing use by the City of the Cottonwood Creek DBPS and the "prudent line" concept is a violation of the requirement to prevent or minimize water quality impacts in this basin because, among other reasons, unstabilized drainageways result in negative impacts to stream morphology and water quality.  Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b; 1997 Permit, Part I.B.1.b.  The City also failed to minimize the adverse impacts to human health or the environment in this basin by adopting the Cottonwood Creek DBPS and the "prudent line" concept.  Permit, Part II.A.8; 2004 Permit, Part II.A.2; 1997 Permit, Part II.A.2.

92.     The adoption and continuing use by the City of the Cottonwood Creek DBPS and the "prudent line" concept is a violation of the City of Colorado Springs Municipal Code §§ 3.8.101 et seq. (Stormwater Quality Management and Discharge Control Code); § 7.3.508 (Streamside Overlay Zone); §§ 7.7.1501 et seq. (Grading Plans and Erosion and Stormwater Quality Control Plans) (in particular §§ 7.7.906 et seq.)

93.     By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit, the City has violated Part I.A.1 of its Permit since the adoption of the 2000 Cottonwood Creek DBPS and the "prudent line" concept.  Permit, Part I.A.1; 2004 Permit, Part I.A.1; 1997 Permit, Part I.A.1.

94.     Unless enjoined, the City's violations will continue.

95.     Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, C.R.S. § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

### THIRD CLAIM FOR RELIEF
### (Water Quality Control Structures Placed in State Waters)

96.     The allegations of the foregoing paragraphs are incorporated herein by reference.

97.     The City is required to implement and enforce the SMP's Commercial/Residential Management Program.  Permit, Part I.B.1.a.

98.     The Commercial/Residential Management Program requires that the City properly manage and regulate runoff from new development and redevelopment.  Permit, Part I.B.1.a.(2). "The permittee must implement and enforce a program to address stormwater runoff from projects for which construction activities disturb greater than or equal to one acre, including projects that are less than one acre that are part of a larger common plan of development or sale that discharge into the MS4."  Id.

99.      "The program must ensure that controls are in place that would prevent or minimize water quality impacts."  Permit, Part I.B.1.a.(2).

100.    The Permit requires that "[m]inimum technical requirements for required structural BMPs shall be documented and be based on those specified in the Drainage Criteria Manual Volume II or equivalent and be in accordance with good engineering, hydrologic and pollution control practices; [u]se an ordinance or other regulatory mechanism to address post-construction runoff from projects…[i]mplement and document procedures to determine if the

BMPs required under Item (a), above, are designed and installed in accordance with program requirements . . . ."  Part I.B.1.a.(2)(a) to (c).

101.    The Commercial/Residential Management Program also requires that the City ensure that permanent stormwater controls (i.e., BMPs) are tracked and properly operated and maintained.  Permit, Part I.B.1.a.(2)(d) to (f).

102.    The City is required to "take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or environment."  Permit, Part II.A.8.

103.    The City is required to use "ordinance or other regulatory mechanism to address post-construction runoff from projects and to implement the requirements of this section, I.B.1.a(2), to the extent allowable under State or local law."  Permit, Part I.B.1.a.(2)(b) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2.

104.    The City's 2004 Permit and 1997 Permit had similar requirements related to new development and post-construction controls to properly manage stormwater runoff, and requirements for the minimization of adverse impacts to human health or the environment.  2004 Permit, Part I.B.1.b. and Part II.A.2.; 1997 Permit, Part I.B.1.b. and Part II.A.2.

105.    The DCM Vol.2 (2002) states that "[t]he intent of permanent water quality BMPs is that they be placed prior to the stormwater runoff being discharged to State Waters."  DCM Vol.2 (2002) at 4-2.

106.    The DCM Vol.2 (2014) states that "[i]n accordance with MS4 permits and regulations, BMPs must be implemented prior to discharges to State Water from areas of 'New Development and Significant Redevelopment'."  DCM Vol.2 (2014) at 1-15.  It further states, "if

a regional BMP is utilized downstream of a discharge from a development into a State Water, additional BMPs are required to protect the State Water between the development site and the regional facility." Id.

107.    Both DCM Vol. 2 (2002) and DCM Vol. 2 (2014) require the use of a Four-Step Process for selecting structural BMPs in newly developing and redeveloping urban areas: Step 1-Employ Runoff Reduction Practices; Step 2-Stabilize Drainageways; Step 3-Provide Water Quality Capture Volume ("WQCV"); and Step 4-Consider Need for Industrial and Commercial BMPs.  DCM Vol. 2 (2002) at 4-3 to 4-4; DCM Vol. 2 (2014) at 1-8 to 1-14 (Step 1-Employ Runoff Reduction Practices; Step 2-Implement BMPs That Provide a Water Quality Capture Volume with Slow Release; Step 3-Stabilize Drainageways; Step 4-Implement Site Specific Other Source Control BMPs).

108.    During the 2013 Audit, the EPA identified at least two water quality control structures that had been placed in State waters at the Flying Horse Pond Filing 26 and the First and Main Town Center developments.  Neither of these developments provided for treatment of stormwater prior to the discharge into State waters.

109.    The First and Main Town Center development drainage report for Filing 16 was received by the City on February 2, 2012.  In the water quality section of the drainage report, it stated that water quality measures for this site were provided within Sand Creek Detention Pond No. 1.

110.    Sand Creek Detention Pond No. 1 is a massive 250 acre-foot detention basin along Constitution Avenue that has been filled with a roughly estimated 15,000 to 25,000 tons of sediment.  The City took over Sand Creek Detention Pond No. 1 from the developer in 2005 to

serve as a regional stormwater detention basin and enhance water quality in the lower reaches of Sand Creek downstream of Constitution Avenue.

111.    By placing water quality control structures in State waters, the City failed since at least February 4, 2013, to minimize water quality impacts.  Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.  The City also has failed to minimize the adverse impacts to human health or the environment by placing water quality control structures in State waters. Permit, Part II.A.8; 2004 Permit, Part II.A.2; 1997 Permit, Part II.A.2.

112.    The City failed to provide for treatment of stormwater prior to the discharge into State waters since at least February 4, 2013, in violation of its Permit.  Permit, Part I.B.1.a.; 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

113.    By failing to provide for treatment of stormwater prior to the discharge into State waters since at least February 4, 2013, the City also has violated applicable provisions of DCM Vol. 2. (2002) at 4-2 and Sect. 4-1; DCM Vol. 2 (2014) at 1-15 and Ch.4.

114.    By failing to provide for treatment of stormwater prior to the discharge into State waters since at least February 4, 2013, the City has violated its Municipal Code §§ 3.8.101 et seq. (Stormwater Quality Management and Discharge Control Code); §§ 7.7.1501 et seq. (Grading Plans and Erosion and Stormwater Quality Control Plans) (in particular §§ 7.7.906 et seq.).

115.    By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit since at least February 4, 2013, the City has violated Part I.A.1 of its Permit.  Permit, Part I.A.1.; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

116.    Unless enjoined, the City's violations will continue.

117.     Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

## FOURTH CLAIM FOR RELIEF
### (Stormwater Controls and Water Quality Capture Volume)

118.     The allegations of the foregoing paragraphs are incorporated herein by reference.

119.     The City is required to implement and enforce the SMP's Commercial/Residential Management Program.  Permit, Part I.B.1.a.

120.     The Commercial/Residential Program requires that the City properly manage and regulate runoff from new development and redevelopment.  Permit, Part I.B.1.a.(2).  "The permittee must implement and enforce a program to address stormwater runoff from projects for which construction activities disturb greater than or equal to one acre, including projects that are less than one acre that are part of a larger common plan of development or sale that discharge into the MS4."  Id.

121.     "The program must ensure that controls are in place that would prevent or minimize water quality impacts."  Permit, Part I.B.1.a.(2).

122.     The Permit requires that "[m]inimum technical requirements for required structural BMPs shall be documented and be based on those specified in the Drainage Criteria Manual Volume II or equivalent and be in accordance with good engineering, hydrologic and pollution control practices; [u]se an ordinance or other regulatory mechanism to address post-construction runoff from projects . . . [i]mplement and document procedures to determine if the BMPs required under Item (a), above, are designed and installed in accordance with program requirements . . . ."  Permit, Part I.B.1.a.(2)(a) to (c).

24

123.     The City is required to "take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or environment."  Permit, Part II.A.8.

124.     The City is required to use "ordinance or other regulatory mechanism to address post-construction runoff from projects and to implement the requirements of this section, I.B.1.a.(2), to the extent allowable under State or local law."  Permit, Part I.B.1.a.(2)(b) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2.

125.     The City's 2004 Permit and 1997 Permit had similar requirements related to new development and post-construction controls to properly manage stormwater runoff, and requirements for the minimization of adverse impacts to human health or the environment.  2004 Permit, Part I.B.1.b. and Part II.A.2.; 1997 Permit, Part I.B.1.b. and Part II.A.2.

126.     The DCM Vol. 2 (2002) states, among other things, that:  "The intent of permanent water quality BMPs is that they be placed prior to the stormwater runoff being discharged to State Waters . . . [w]henever practical, the City of Colorado Springs promotes permanent water quality BMPs on all sites."  DCM Vol. 2 (2002) at 4-2; DCM Vol. 2 (2014) (requiring Four-Step Process to minimize adverse impacts of urbanization) at 1-8 to 1-14, and Ch. 4 (Treatment BMPs).

127.     The DCM Vol. 2 (2002) states that for, "[a]ll sites zoned R-4, R-5, PUD, SU, OR, OC, PBC, C-5, C-6, PIP-1, PIP-2, M-1, M-2, PF, APD, and PCR that include total development/redevelopment areas of one (1) acre or larger . . . Water Quality Capture Volume (WQCV) . . . shall be provided for the total site or individual lots/parcels.  Other permanent BMPs may also be required as appropriate."  DCM Vol. 2 (2002) at 4-1.

128.    The DCM Vol. 2 (2002) states, "[a]ll sites zoned R (Estate), R-1 6000, R-1 9000,

R-2 and DFOZ, that include total development/redevelopment areas of two (2) acres or larger

will be reviewed on a case by case basis that will include an assessment of impacts from

stormwater runoff from new development/redevelopment to State Waters and a determination of

the need for any additional permanent water quality BMPs.  Sites for which City Engineering

determines water quality impacts to State Waters are minimal and permanent water quality

BMPs are impracticable will be granted a waiver, based on the submittal of sufficient

justification."  DCM Vol. 2 (2002) at 4-1.

129.    The DCM Vol. 2 (2014) does not allow waivers for water quality control

measures for residential properties.  Compare DCM Vol. 2 (2014) at 4-1 with DCM Vol. 2

(2002) at 4-1.

130.    Both DCM Vol. 2 (2002) and DCM Vol. 2 (2014) require the use of a Four-Step

Process for selecting structural BMPs in newly developing and redeveloping urban areas: Step 1-

Employ Runoff Reduction Practices; Step 2-Stabilize Drainageways; Step 3-Provide Water

Quality Capture Volume ("WQCV"); and Step 4-Consider Need for Industrial and Commercial

BMPs.  DCM Vol. 2 (2002) at 4-3 to 4-4; DCM Vol. 2 (2014) at 1-8 to 1-14 (Step 1-Employ

Runoff Reduction Practices; Step 2-Implement BMPs That Provide a Water Quality Capture

Volume with Slow Release; Step 3-Stabilize Drainageways; Step 4-Implement Site Specific

Other Source Control BMPs).

131.    Both the DCM Vol. 2 (2002) and the DCM Vol. 2 (2014) require that the City

provide WQCV.  "All multi-family residential, commercial, and industrial sites and all sites

requiring stormwater quantity detention . . . must address stormwater quality by providing the

26

WQCV."  DCM Vol. 2 (2002) at 4-4.  "The Four Step Process . . . is applicable to all new re-development projects with construction activities that disturb 1 acre or greater or that disturb less than 1 acre but are part of a larger common plan of development or sale."  DCM Vol. 2 (2014) at 1-8 (Step 2: Implement BMPs that Provide A Water Quality Capture Volume With Slow Release).

132.    The City of Colorado Springs Municipal Code states, "[a]ll sites zoned R estate (residential), R-1 6000 (Single-family residential), R-1 9000 (single-family residential), R-2 (two-family residential) and DFOZ (design flexibility overlay – base zone must be R, R-1 6000 or R-1 9000) that include total development/redevelopment areas of two (2) acres or larger will be reviewed on a case by case basis that will include an assessment of impacts from stormwater runoff from the new development to State waters and a determination of the need for any additional permanent water quality BMPs.  Sites for which City Engineering determines water quality impacts to State waters are minimal and permanent water quality BMPs are impractical will be granted a waiver, based on the submittal of sufficient justification.  Written waiver requests from requiring permanent stormwater quality BMPs will be considered by the City Engineer."  City Code § 7.7.906 B.3.

133.    All sites that do not meet the requirements of City Code § 7.7.906 B.3 "may be required to provide permanent stormwater quality BMPs if significant stormwater quality impacts are anticipated as a result of development/redevelopment of the Site, as determined by the City Engineer."  City Code § 7.7.906 B.4.

134.    "Whenever practical, the City of Colorado Springs promotes permanent stormwater quality BMPs on all sites."  City Code § 7.7.906 B.4

135.    During the 2013 Audit, the EPA identified seven residential developments where the City failed to require stormwater control measures, failed to require written requests from the developers for such waivers of stormwater control measures, failed to require from the developers and then assess on a case by case basis sufficient justification to allow for waivers of stormwater control measures, failed to assess the impacts from stormwater runoff at these developments without stormwater control measures, and failed to determine whether any additional permanent water quality BMPs were necessary at these developments.  These actions were a violation of the City's Permit, the applicable DCM Vol. 2 criteria, and Municipal Code. Permit, Part I.B.1.a.(2) and (a); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b; DCM Vol. 2 (2002) at 4-1 and DCM Vol. 2 (2014) at 4-1; City Code § 7.7.906 B.3.

136.    By failing to require stormwater control measures at these seven developments, the City failed to prevent or minimize water quality impacts.  Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

137.    By failing to require stormwater control measures at these seven developments, the City failed to provide for treatment of stormwater prior to the discharge into State waters. Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.; DCM Vol. 2 (2002) at 4-2 and DCM Vol. 2 (2014) at 1-8 to 1-14; City Code § 7.7.906 B.4.

138.    The City also failed at these seven developments to provide WQCV, as required. Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.; DCM Vol. 2 (2002) at 4-4; DCM Vol. 2 (2014) at 1-8.

139.    By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit, the City has violated Part I.A.1 of its Permit since at least February 4, 2013.  Permit, Part I.A.1; 2004 Permit, Part I.A.1; 1997 Permit, Part I.A.1.

140.    Upon information and belief, the City has failed to require stormwater control measures and/or WQCV at other developments within the MS4.

141.    By failing to require stormwater control measures and/or WQCV at developments within its MS4, the City has failed to "take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or environment."  Permit, Part II.A.8; 2004 Permit, Part II.A.2; 1997 Permit, Part II.A.2.

142.    Unless enjoined, the City's violations will continue.

143.    Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, C.R.S. § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

## FIFTH CLAIM FOR RELIEF
### (Post-Construction BMPs – Design, Approval, Installation)

144.    The allegations of the foregoing paragraphs are incorporated herein by reference.

145.    The City is required to implement and enforce the SMP's Commercial/Residential Management Program.  Permit, Part I.B.1.a.

146.    The Commercial/Residential Management Program requires that the City properly manage and regulate runoff from new development and redevelopment.  Permit, Part I.B.1.a.(2). "The permittee must implement and enforce a program to address stormwater runoff from projects for which construction activities disturb greater than or equal to one acre, including

29

projects that are less than one acre that are part of a larger common plan of development or sale that discharge into the MS4."  Id.

147.    "The program must ensure that controls are in place that would prevent or minimize water quality impacts."  Permit, Part I.B.1.a.(2).

148.    The Permit requires that "[m]inimum technical requirements for required structural BMPs shall be documented and be based on those specified in the Drainage Criteria Manual Volume II or equivalent and be in accordance with good engineering, hydrologic and pollution control practices; [u]se an ordinance or other regulatory mechanism to address post-construction runoff from projects . . . [i]mplement and document procedures to determine if the BMPs required under Item (a), above, are designed and installed in accordance with program requirements . . . ."  Part I.B.1.a.(2)(a) to (c).

149.    The City must "[i]mplement and document procedures to determine if the BMPs required under Item (a), above, are designed and installed in accordance with program requirements."  Permit, Part I.B.1.a.(2)(c).

150.    The City is required to use "ordinance or other regulatory mechanism to address post-construction runoff from projects and to implement the requirements of this section, I.B.1.a.(2), to the extent allowable under State or local law."  Permit, Part I.B.1.a.(2)(b) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2.

151.    The City's 2004 Permit and 1997 Permit had similar requirements related to new development and post-construction controls to properly manage stormwater runoff.  2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

152.    The City of Colorado Springs Municipal Code states that the "[e]rosion and stormwater quality control plan shall require the design, implementation and maintenance of BMPs as set forth in the most recent version of the 'Drainage Criteria Manual, Volume II: Stormwater Quality Policies, Procedures And Best Management Practices', and shall include the plan elements as set forth in the manual, including a cost estimate for all erosion and stormwater quality control measures, prior to filing with the City Engineer." City Code § 7.7.1504 A.

153.    The City of Colorado Springs Municipal Code states that "[a]ny land disturbance by any owner, developer, builder, contractor or other person shall comply with the basic grading, erosion and stormwater quality requirements and general prohibitions as listed below.  In many cases, this will require the design, implementation and maintenance of BMPs as specified in the manual, even if an erosion and stormwater quality control plan is not required." City Code § 7.7.1505.

154.    Both DCM Vol. 2 (2002) and DCM Vol. 2 (2014) require the use of a Four-Step Process for selecting structural BMPs in newly developing and redeveloping urban areas: Step 1-Employ Runoff Reduction Practices; Step 2-Stabilize Drainageways; Step 3-Provide Water Quality Capture Volume ("WQCV"); and Step 4-Consider Need for Industrial and Commercial BMPs.  DCM Vol. 2 (2002) at 4-3 to 4-4; DCM Vol. 2 (2014) at 1-8 to 1-14 (Step 1-Employ Runoff Reduction Practices; Step 2-Implement BMPs That Provide a Water Quality Capture Volume with Slow Release; Step 3-Stabilize Drainageways; Step 4-Implement Site Specific Other Source Control BMPs).

155.    The City's DCM Vol. 2 (2002) has extended detention basin ("EDB") specification drawings and design forms that require, among other things, ". . . a

31

presedimentation forebay, inlet pipe, top stage, bottom stage, low flow channel, and outlet with trash rack . . . ." DCM Vol. 2 (2002) at 4-61 to 4-74. The DCM Vol. 2 (2014) also has design specifications for EDBs. DCM Vol. 2 (2014) at 4-1.

156.   The City has failed since at least February 4, 2013, to develop and ensure the design, approval, and installation of BMPs that would prevent or minimize water quality impacts. Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

157.   The City failed since at least February 4, 2013, to ensure that public and private development and redevelopment plans for permanent BMPs were submitted to the City's Engineering Development Review ("EDR") staff with the required design plans – including required inspection and maintenance plans ("IM") and maintenance agreements ("MA") – prior to approval and issuance of grading permits, in violation of the Permit and City Code. Permit, Part I.B.1.a.(2)(b) and (c); City Code §§ 7.7.1504A and 7.7.1505.

158.   Even when public and private development and redevelopment plans for permanent BMPs were submitted to the City's EDR, this review has not been consistent with the requirements of the Permit, applicable provisions of DCM Vol. 2, and Municipal Code. Permit, Part I.B.1.a.(2)(b) and (c); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.; City Code §§ 7.7.1504A and 7.7.1505; DCM Vol. 2 (2002) at Sect. 4-1; DCM Vol. 2 (2014) at Ch. 4 – Ch. 6.

159.   The City failed since at least February 4, 2013, to ensure that public and private BMPs, including but not limited to EDBs, have been properly designed, approved, and installed in accordance with the Permit, Municipal Code, and applicable provisions of DCM Vol. 2. Permit, Part I.B.1.a.(2)(b) and (c); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.; City

Code §§ 7.7.1504A and 7.7.1505; DCM Vol. 2 (2002) at Sect. 4-1; DCM Vol. 2 (2014) at Ch. 4 – Ch. 6.

160.    By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit since at least February 4, 2013, the City has violated Part I.A.1 of its Permit.  Permit, Part I.A.1.; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

161.    Unless enjoined, the City's violations will continue.

162.    Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

## SIXTH CLAIM FOR RELIEF
### (Post-Construction BMPs – Long-term Operation, Maintenance, Tracking)

163.    The allegations of the foregoing paragraphs are incorporated herein by reference.

164.    The City is required to implement and enforce the SMP's Commercial/Residential Management Program.  Permit, Part I.B.1.a.

165.    The Commercial/Residential Program requires that the City properly manage and regulate runoff from new development and redevelopment.  Permit, Part I.B.1.a.(2).  "The permittee must implement and enforce a program to address stormwater runoff from projects for which construction activities disturb greater than or equal to one acre, including projects that are less than one acre that are part of a larger common plan of development or sale that discharge into the MS4."  Id.

166.    "The program must ensure that controls are in place that would prevent or minimize water quality impacts."  Permit, Part I.B.1.a.(2).

167.     The Permit requires that "[m]inimum technical requirements for required structural BMPs shall be documented and be based on those specified in the Drainage Criteria Manual Volume II or equivalent and be in accordance with good engineering, hydrologic and pollution control practices; [u]se an ordinance or other regulatory mechanism to address post-construction runoff from projects . . . [i]mplement and document procedures to determine if the BMPs required under Item (a), above, are designed and installed in accordance with program requirements . . . ."  Permit, Part I.B.1.a.(2)(a) to (c).

168.     The City must "[i]mplement and document procedures, including procedures to enforce the requirements to maintain BMPs when necessary, to ensure adequate long-term operation and maintenance of BMPs consistent with the Permittee's program requirements.  Any modification to the BMP design shall be documented prior to the modification occurring."  Permit, Part I.B.1.a.(2)(d).

169.     The City must then implement procedures and mechanisms to track the location of these required BMPs and document whether they are constructed and operating as required by the Permit.  Permit, Part I.B.1.a.(2)(f).

170.     The City's 2004 Permit and 1997 Permit had similar requirements related to new development and post-construction controls to properly manage stormwater runoff.  2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

171.     The City is required to use "ordinance or other regulatory mechanism to address post-construction runoff from projects and to implement the requirements of this section, I.B.1.a.(2), to the extent allowable under State or local law."  Permit, Part I.B.1.a.(2)(b) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2.

172.     The City's Permit further states that "[t]he permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit."  City's Permit, Part II.A.7; 2004 Permit, Part II.A.3; 1997 Permit, Part II.A.3

173.     The City of Colorado Springs Municipal Code states that, "[e]rosion and storm water quality control plans shall require the design, implementation and maintenance of BMPs as set forth in the most recent version of the Drainage Criteria Manual, Volume 2:  Stormwater Quality Policies, Procedures And Best Management Practices, and shall include plan elements as set forth in the manual . . . ."  City Code § 7.7.1504 A.

174.     The City of Colorado Springs Municipal Code also states that "[a]ny land disturbance by any owner, developer, builder, contractor or other person shall comply with the basic grading, erosion and storm water quality requirements and general prohibitions as listed below.  In many cases, this will require the design, implementation and maintenance of BMPs as specified in the manual, even if an erosion and stormwater quality control plan is not required . . . ."  City Code § 7.7.1505.

175.     The City of Colorado Springs Municipal Code also states that "[p]ermanent stormwater quality BMPs ... shall be inspected and maintained by the responsible party, in accord with the provisions of this section and in accord with the measures outlined in the most recent version of the DMC, volume II."  City Code § 7.7.1527 A to E.

176.    The City failed since at least February 4, 2013, to implement and enforce a program to ensure that long-term controls are in place that would prevent or minimize water quality impacts.  Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

177.    The City failed since at least February 4, 2013, to use its ordinance and available regulatory mechanisms to address noncompliance with the requirements for proper operation and maintenance of BMPs as required.  Permit, Part I.B.1.a.(2)(b); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.; City Code §§ 7.7.1504A and 7.7.1505.

178.    The City has failed since at least February 4, 2013, to implement and document procedures to enforce the requirements to maintain BMPs and to ensure adequate long-term operation and maintenance of BMPs as required.  Permit, Part I.B.1.a.(2)(d); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.; Permit, Part II.A.7.

179.    The City failed since at least February 4, 2013, to implement procedures and mechanisms to track the location of required BMPs and document whether they are constructed and operated as required.  Permit, Part I.B.1.a.(2)(f); 2004 Permit, Part I.B.1.b.; 1997 Permit, Part I.B.1.b.

180.    By failing to implement and document procedures to ensure adequate long-term operation and maintenance of BMPs, the City has violated applicable provisions of DCM Vol. 2.  DCM Vol. 2 (2002) at 4-2 and Sect. 4-1; DCM Vol. 2 (2014) at 1-15 and Ch.4 – Ch. 6.

181.    By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit since at least February 4, 2013, the City has violated Part I.A.1 of its Permit.  Permit, Part I.A.1.; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

182.    Unless enjoined, the City's violations will continue.

183.     Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

### SEVENTH CLAIM FOR RELIEF
### (Municipally-Owned Structural Controls and Facilities)

184.     The allegations of the foregoing paragraphs are incorporated herein by reference.

185.     The City is required to implement and enforce the SMP's Commercial/Residential Management Program.  Permit, Part I.B.1.a.

186.     The Commercial/Residential Program requires that the City "implement a program of routine maintenance activities for municipally-owned structural controls to reduce pollutants (including floatables) in discharges from the MS4."  Permit, Part I.B.1.a.(1).

187.     As part of this program, the City is required to remove sediment, trash and debris from municipally-owned detention facilities and open-channel drainage ways on a periodic basis, and remove trash and debris from municipally-owned storm sewer inlets on an as-needed basis. Permit, Part I.B.1a.(1)(a) to (c).

188.     The City is required to implement and document procedures for meeting these requirements related to maintenance of structural controls by October 1, 2012.  Permit, Part I.B.1.a.(1)(b) and (c).

189.     The City is required to "provide adequate finances, staff, equipment, and support capabilities to implement the CDPS Stormwater Management Program."  Permit, Part I.B.3.

190.     Pursuant to these requirements, the City must "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit.

37

Proper operation and maintenance includes effective performance, adequate funding, adequate operator staffing and training, and adequate laboratory process controls, including appropriate quality assurance procedures."  Permit, Part II.A.7.

191.    Pursuant to these requirements, the City must "take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or environment."  Permit, Part II.A.8.

192.    The City's 2004 Permit and 1997 Permit had similar requirements related to operation and maintenance of municipally-owned structural controls and facilities, and the duty to minimize or prevent adverse impacts to human health or environment.  2004 Permit, Part I.B.1.a.(1) and Part II A.2. and 3.; 1997 Permit, Part I.B.1.a.(1) and Part II.A.2. and 3.

193.    The City is required to ensure "legal authority exists and is maintained to control discharges to and from the MS4."  Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2. There is no City of Colorado Springs Municipal Code that addresses proper operation and maintenance of municipally-owned structural controls and facilities.

194.    The City does not meet these requirements.  For example, the City has failed to properly operate and maintain Sand Creek Detention Pond No. 1.  Sediment and debris continuously accumulate in the basin's 23.5 acre-foot water quality pool.  Because the City has not regularly maintained the basin's water quality pool, large quantities of sediment have washed from the basin over the drop inlet structure during rain events since 2005.

195.    The City has failed since at least August 18, 2015 to properly operate and maintain municipally-owned structural controls, and failed to document and implement procedures for meeting Permit requirements related to operation and maintenance of

municipally-owned structural controls.  Permit, Part I.B.1a.(1)(a) to (c); 2004 Permit, Part I.B.1.a.(1); 1997 Permit, Part I.B.1.a.(1).

196.    The City has failed since at least August 18, 2015, to maintain and operate its municipally-owned structural controls and facilities as required to prevent or minimize water quality impacts.  Permit, Part I.B.1.a.(2); 2004 Permit, Part I.B.1.a.(1); 1997 Permit, Part I.B.1.a.(1).

197.    The City has failed since at least August 18, 2015 to "provide adequate finances, staff, equipment, and support capabilities to implement the CDPS Stormwater Management Program."  Permit, Part I.B.3; 2004 Permit, Part I.B.1.a.(1); 1997 Permit, Part I.B.1.a.(1).

198.    The City also failed since at least August 18, 2015 to properly operate and maintain all facilities and systems of treatment and control used to achieve compliance with the requirements of the Permit.  Permit, Part II.A.7.; 2004 Permit, Part II A.3.; 1997 Permit, Part II.A.3.

199.    Pursuant to these requirements, the City has failed since at least August 18, 2015, to take all reasonable steps to minimize adverse impacts to human health and the environment. Permit, Part II.A. 8.; 2004 Permit, Part II A.2.; 1997 Permit, Part II.A.2.

200.    By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit since at least August 18, 2015, the City has violated Part I.A.1 of its Permit.  Permit, Part I.A.1.; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

201.    Unless enjoined, the City's violations will continue.

202.     Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

**EIGHTH CLAIM FOR RELIEF**
**(<u>Construction Sites Stormwater Quality Control Plans</u>)**

203.     The allegations of the foregoing paragraphs are incorporated herein by reference.

204.     The City is required to implement and enforce the Stormwater Management Program's Construction Sites Program.  Permit, Part I.B.1.d.

205.     The Construction Sites Program states that the City must "implement and enforce the Construction Sites Program to reduce the discharge of pollutants from public and private construction sites that disturb at least one acre of ground, or are part of a larger common plan of development or sale that would disturb one or more acres."  Permit, Part I.B.1.d.

206.     The City must require, review, and approve or disapprove stormwater quality control plans for construction sites that disturb at least one acre of ground, or are part of a larger common plan of development or sale that would disturb one or more acres.  Permit, Part I.B.1.d.(1)(b).

207.     The City must "provide adequate project oversight to prevent inadequate stormwater control site plans from being implemented and resulting in degradation of state waters."  Permit, Part I.B.1.d.(1)(b).

208.     The City's 2004 Permit and 1997 Permit had similar requirements related to the construction sites program.  2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part I.B.1.b.(3)-(4).

209.     The City is required to "use ordinances and rules to integrate into the development review process the requirements for stormwater quality control plans." Permit, Part I.B.1.d.(1)(a) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2.

210.     The City of Colorado Springs Municipal Code states that, "[e]rosion and storm water quality control plans shall require the design, implementation and maintenance of BMPs as set forth in the most recent version of the 'Drainage Criteria Manual, Volume II: Stormwater Quality Policies, Procedures And Best Management Practices, and shall include the plan elements as set forth in the manual." City Code § 7.7.1504 A.

211.     Pursuant to these requirements, the City's DCM Vol. 2 requires that construction sites have stormwater quality control plans that describe stormwater controls and measures to be used to minimize the discharge of pollutants from stormwater.  DCM Vol. 2 (2014) at 7-7; DCM Vol. 2 (2002) at 3-2.

212.     The DCM Vol. 2 states that any City-approved stormwater quality control plan shall, among other things: (1) identify all potential sources of pollution which may affect the quality of stormwater discharges associated with construction activity; (2) describe the practices to be used to reduce the pollutants in stormwater discharges associated with construction activity including installation, implementation, and maintenance requirements; (3) include narrative descriptions of appropriate controls and measures that will be implemented before and during construction activities at the facility; (4) describe phased BMP implementation, including the relationship between the phases of construction, the proposed sequencing of major activities, BMPs installed under each phase, and the implementation and maintenance of control measures; (5) be prepared in accordance with good engineering, hydrologic, and pollution control practices;

41

(6) describe the practices used to achieve final stabilization of all disturbed areas at the site, including specific vegetation information; and describe any planned practices to control pollutants in stormwater discharges that will occur after construction operations have been completed.  DCM Vol. 2 (2014) at 7-6 to 7-14; DCM Vol. 2 (2002) at 3-6 to 3-14.

213.    The DCM Vol. 2 requires that any stormwater quality control plan be updated throughout construction and stabilization of the site.  DCM Vol.2 (2014) at 7-7; DCM Vol. 2 (2002) at 3-2 to 3-14.

214.    Since at least April 7, 2015, the City failed to provide adequate oversight for stormwater quality control plans as required.  Permit, Part I.B.1.d.(1); 2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part I.B.1.b.(3)-(4).

215.    Since at least April 7, 2015, the City failed as set forth in its Municipal Code to require compliance with the DCM Vol. 2's site planning provisions and failed to provide adequate project oversight to prevent inadequate stormwater quality control plans from being implemented.  Permit, Part I.B.1.d.(1)(a) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2; City Code § 7.7.1504 A; DCM Vol.2 (2014) at 7-7; DCM Vol. 2 (2002) at 3-2 to 3-14.

216.    Since at least April 7, 2015, the City approved numerous stormwater quality control plans at construction sites that are inadequate and violate the Municipal Code and the City's basic site planning standards in the DCM Vol. 2.  Permit, Part I.B.1.d.(1)(a) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2; City Code § 7.7.1504 A; DCM Vol.2 (2014) at 7-7; DCM Vol. 2 (2002) at 3-2 to 3-14.

217.    Since at least April 7, 2015, the City has failed to require that stormwater quality control plans at construction sites be updated as required.  Permit, Part I.B.1.d.(1)(a) and Part I.B.2; 2004 Permit, Part I.B.2; 1997 Permit, Part I.B.2; City Code § 7.7.1504 A; DCM Vol.2 at 7-7; DCM Vol. 2 (2002) at 3-2 to 3-14.

218.    By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit since at least April 7, 2015, the City has violated Part I.A.1 of its Permit. Permit, Part I.A.1; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

219.    Unless enjoined, the City's violations will continue.

220.    Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

## NINTH CLAIM FOR RELIEF
### (Construction Sites Stormwater Quality Control Plans -- Implementation)

221.    The allegations of the foregoing paragraphs are incorporated herein by reference.

222.    The City is required to implement and enforce the Stormwater Management Program's Construction Sites Program.  Permit, Part I.B.1.d.

223.    The Construction Sites Program states that the City must "implement and enforce the Construction Sites Program to reduce the discharge of pollutants from public and private construction sites that disturb at least one acre of ground, or are part of a larger common plan of development or sale that would disturb one or more acres."  Permit, Part I.B.1.d.

224.    The City must "continue to implement requirements for the selection, implementation, installation, and maintenance of appropriate BMPs at construction sites." Permit, Part I.B.1.d.1.(d)(2).  The City also must require that the construction site operators

43

themselves "implement BMPs to control the discharge of pollutants . . . ." Permit, Part I.B.1.d.(1)(a).

225.    The City must "provide adequate project oversight to prevent inadequate stormwater control site plans from being implemented and resulting in degradation of state waters."  Permit, Part I.B.1.d.(1)(b).

226.    The City's 2004 Permit and 1997 Permit had similar requirements related to the construction sites program.  2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part I.B.1.b.(3)-(4).

227.     The City of Colorado Springs Municipal Code states that, "[a]ny land disturbance by any owner, developer, builder, contractor or other person shall comply with any basic grading, erosion and stormwater quality requirements and general prohibitions . . . this will require the design, implementation and maintenance of BMPs as specified in the manual, even if an erosion and stormwater quality control plan is not required."  City Code § 7.7.1505.

228.    Pursuant to these requirements, the City's DCM Vol. 2 requires that stormwater quality control plans and related BMPs be implemented at construction sites to minimize the discharge of pollutants from stormwater.  DCM Vol. 2 (2014) at 7-17; DCM Vol. 2 (2002) at 3-15.

229.    The City has failed since at least April 7, 2015, to implement requirements for the selection, implementation, installation, and maintenance of appropriate BMPs at construction sites.  Permit, Part I.B.1.d.(1)(a); 2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part I.B.1.b.(3)-(4).

230.    The City has failed since at least April 7, 2015, to provide adequate project oversight to prevent inadequate stormwater quality control plans from resulting in degradation of

State waters.  Permit, Part I.B.1.d.(1)(b); 2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part

I.B.1.b.(3)-(4); see also City Code § 7.7.1505 A ("Stormwater discharges from construction sites

shall not cause or threaten to cause pollution, contamination or degradation of State waters.")

231.    By allowing discharges that are not in accordance with the City's SMP and other

provisions of the Permit since at least April 7, 2015, the City has violated Part I.A.1 of its Permit.

Permit, Part I.A.1; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

232.    Unless enjoined, the City's violations will continue.

233.    Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality

Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the

statutory maximum for each violation.

**TENTH CLAIM FOR RELIEF**
**(<u>Construction Sites Stormwater Quality Control Plans -- Enforcement</u>)**

234.    The allegations of the foregoing paragraphs are incorporated herein by reference.

235.    The City is required to implement and enforce the Stormwater Management

Program's Construction Sites Program.  Permit, Part I.B.1.d.

236.    The Construction Sites Program states that the City must "implement and enforce

the Construction Sites Program to reduce the discharge of pollutants from public and private

construction sites that disturb at least one acre of ground, or are part of a larger common plan of

development or sale that would disturb one or more acres."  Permit, Part I.B.1.d.

237.    The City is required to "implement procedures for inspection and enforcement of

control measures at construction sites to the extent allowable under State and local law."  Permit,

Part I.B.1.d.(3).

238.     The City must implement this enforcement program "to ensure compliance with requirements as defined in [City of Colorado Springs] ordinances and rules and approved plans, and to ensure effective operation and maintenance of BMPs," and "minimize the occurrence of, and obtain compliance from, chronic and recalcitrant violators of control measures."  Permit, Part I.B.1.d.(3).

239.     The City's 2004 Permit and 1997 Permit had similar requirements related to the construction sites program.  2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part I.B.1.b.(3)-(4).

240.     The City of Colorado Springs Municipal Code states that, "[t]he property owner or the property owner's designated agent shall perform regular inspections of all grading, erosion control and stormwater quality control operations in accord with the inspections procedures outlined in the manual or as revised on the grading plan and/or erosion and stormwater quality control plan."  City Code § 7.7.1507 B.

241.     The City of Colorado Springs Code states that, "[w]henever the City Engineer has inspected or caused to be inspected any grading or land disturbance and has determined noncompliance with this part, the City Engineer shall cause enforcement measures and/or other remedies to be undertaken."  City Code § 7.7.1508.

242.     Section 7.7.1509 of the City of Colorado Springs Municipal Code identifies enforcement measures and remedies available to the City Engineer in determining noncompliance with stormwater quality control plans and related BMPs.  City Code § 7.7.1509.

243.     Pursuant to these requirement, the City's DCM Vol. 2 describes inspection requirements and enforcement practices.  DCM Vol. 2 (2014) at 7-18 to 7-24; DCM Vol. 2 (2002) at 3-9 to 3-10 and 3-16 to 3-17.

244.     The DCM Vol. 2 directs the City to "take enforcement action on a site as necessary to ensure proactive compliance with BMP implementation and maintenance."  DCM Vol. 2 (2014) at 7-22; DCM Vol. 2 (2002) at 3-9 to 3-10 and 3-16 to 3-17.

245.     The City's DCM Vol. 2 also states the requirements for initial inspections and compliance inspections.  DCM Vol. 2 (2014) at 7-18; DCM Vol. 2 (2002) at 3-9 to 3-10 and 3-16 to 3-17.  One purpose of the initial inspection is "to confirm that the approved plan is being implemented."  DCM Vol. 2 (2014) at 7-18.

246.     The DCM Vol. 2 states that on compliance inspections, the City's inspector "verifies that the latest self-inspection report is accurate and that BMPs are functioning according to design and only allowable discharges are occurring.  The inspector also verifies that the Erosion and Stormwater Quality Control Plan is updated to reflect current BMP activity."  DCM Vol. 2 (2014) at 7-18.

247.     The DCM Vol. 2 lists the City's enforcement steps when there is no immediate danger to public safety, property, or water resources, including steps to take to correct and follow up on a documented violation.  DCM Vol. 2 (2014) at Table 7-2 (Possible Enforcement Options); DCM Vol. 2 (2002) at 3-16 to 3-17; City Code § 7.7.1509.

248.     The DCM Vol. 2 directs inspectors to take "more aggressive action" than the Table 7-2 steps "when there are impacts on public safety, property or water resources."  DCM Vol. 2 (2014) at 7-23; DCM Vol. 2 (2002) at 3-16 to 3-17; City Code § 7.7.1509.  Situations with such impacts could include, but are not limited to "the wash out of channels . . . deposition of sediment that causes or has the potential to cause property damage, or the deposition of materials into water ways."  DCM Vol. 2 (2014) at 7-22.

249. The DCM Vol. 2 also directs inspectors to take "more aggressive action" for enforcement when there are chronic or frequent problems at the site.  DCM Vol. 2 (2014) at 7-22.

250. The City failed since at least February 7, 2013, "to ensure compliance with requirements as defined in [City of Colorado Springs] ordinances and rules and approved plans, and to ensure effective operation and maintenance of BMPs."  Permit, Part I.B.1.d.(3); 2004 Permit, Part I.B.1.b.(3)-(4); 1997 Permit, Part I.B.1.b.(3)-(4).

251. The City has failed since at least February 4, 2013, to comply with inspection and enforcement requirements of the Municipal Code and the provisions in the DCM Vol. 2.  City Code §§ 7.7.1507 B, 7.7.1508 and 7.7.1509; DCM Vol. 2 (2014) at 7-18 to 7-24 and Table 7-2 (Possible Enforcement Options); DCM Vol. 2 (2002) at 3-9 to 3-10 and 3-16 to 3-17.

252. The City failed since at least February 7, 2013, to take corrective enforcement actions outlined in the Municipal Code and the DCM Vol. 2 in response to serious design, implementation, and maintenance problems at construction sites.

253. By allowing discharges that are not in accordance with the City's SMP and other provisions of the Permit since at least April 7, 2015, the City has violated Part I.A.1 of its Permit.  Permit, Part I.A.1; 2004 Permit, Part I.A.1.; 1997 Permit, Part I.A.1.

254. Unless enjoined, the City's violations will continue.

255. Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. § 19.4, and Colorado Water Quality Control Act, CRS § 25-8-101 et seq., the City is liable for civil penalties not to exceed the statutory maximum for each violation.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendant as follows:

1.      Pursuant to 33 U.S.C. § 1319(b), enjoin the City from any and all ongoing or future violations of the Clean Water Act by ordering compliance with the Act, the stormwater regulations (40 C.F.R. §122.26), and the City's Permit;

2.      Pursuant to CRS § 25-8-101 et seq., enjoin the City from any and all ongoing or future violations of the Colorado Water Quality Control Act by ordering compliance with the CWQCA and the Colorado Discharge Permit Regulations 61;

3.      Pursuant to the City's Permit, Part I.B.1, enjoin the City to develop, implement, and enforce its Stormwater Management Program as required by the Permit.

4.      Pursuant to the City's Permit, Part I.A.1., enjoin the City from any and all ongoing discharges that are not in accordance with the City's Stormwater Management Program and other provisions of the Permit.

5.      Pursuant to the City's Permit Part I.B.2, enjoin the City from any and all ongoing or future violations of the City of Colorado Springs Municipal Code §§ 3.8.101 et seq. (Stormwater Quality Management and Discharge Control Code), and §§ 7.7.1501 et seq. (Grading Plans and Erosion and Stormwater Quality Control Plans) (in particular §§ 7.7.906 et seq.);

6.      Pursuant to all requirements as set forth in Part I. and Part II. of the City's Permit, 2004 Permit, and 1997 Permit, enjoin the City from any ongoing or future violations, and order the City to take all steps necessary to redress or mitigate the impact of its violations;

7.      Pursuant to 33 U.S.C. § 1319(d), 40 C.F.R. Part 19, and CRS § 25-8-101 et seq.,

assess civil penalties against the City, as permitted by law;

8.      Award Plaintiffs their costs and disbursements in this action; and

9.      Grant Plaintiffs such other and further relief as the Court deems just and proper.

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

> JOHN C. CRUDEN
> Assistant Attorney General
> Environment and Natural Resources Division
> United States Department of Justice
>
> *Heidi Hoffman*
> HEIDI HOFFMAN
> Trial Attorney
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> 999 18th Street, South Terrace Suite 370
> Denver, Colorado 80202
> (303) 844-1392

Of Counsel:
WENDY SILVER
Senior Enforcement Attorney
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street, ENF-L
Denver, Colorado 80202-1129
(303) 312-6637

FOR PLAINTIFF THE STATE OF COLORADO:

> CYNTHIA H. COFFMAN
> Attorney General
>
> *Margaret Parish*
> MARGARET PARISH*
> Assistant Attorney General
> Natural Resources & Environment Section
> Ralph L. Carr Colorado Judicial Center
> 1300 Broadway, 7th Floor

50

Denver, Colorado 80203
(720) 508-6265
Colo. Bar No. 40988

*<u>Counsel of Record</u>