# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLORADO

No: 1:16-cv-2745-RPM-KMT

UNITED STATES OF AMERICA and
THE STATE OF COLORADO,

    *Plaintiffs*,

v.

CITY OF COLORADO SPRINGS, COLORADO,

    *Defendant*.

_____

## OPPOSITION OF THE CITY OF COLORADO SPRINGS TO MOTION TO INTERVENE OF THE LOWER ARKANSAS VALLEY WATER CONSERVANCY DISTRICT

_____

    The City of Colorado Springs ("City") opposes the motion to intervene of the Lower Arkansas Valley Water Conservancy District ("Lower Arkansas district" or "district") for three reasons. First, the district fails to satisfy a statutory condition to intervention of right because the district has no legal right to enforce the state permit in this action. Second, the district cannot intervene because it seeks to protect interests that are not regulated in any way by the permit that underlies this action. Finally, permissive intervention should be unavailable because the district's expressed interests would inject new issues, the scope of state water rights, and substantial new technical and scientific complexity into the underlying action.

4116201.1
12/21/16

## BACKGROUND

The underlying case here is an action to enforce a state water quality permit – called a Municipal Separate Storm Sewer System permit, or stormwater "MS4 permit" – issued by the Colorado Department of Public Health and Environment ("CDPHE") to the City of Colorado Springs. Stormwater is precipitation that falls to the ground as rain or snow, runs off, and eventually discharges into rivers and streams. The scope of the City's MS4 permit is quite narrow in this sense. The City's MS4 permit regulates *only* the discharge of any pollutants in the stormwater that is collected in the City's city-wide system of gutters, pipes, and other conveyances and then discharged to state waters. C.R.S. § 25-8-501(1) (2016) (permit requirement); 5CCR 1002-61, Section 61.2(62) (2016) (definition of MS4 system).

The filing of this enforcement action in this Court follows more than a year of intensive settlement discussions and other significant MS4 permit activities by the federal, state and city parties to this case. The City was first notified of the federal and state governments' intent to bring this enforcement action in a letter received on November 5, 2015. At the invitation of the plaintiffs, and beginning soon after the City's receipt of that letter, the federal, state and city parties pursued intensive, serious settlement negotiations for more than a year. The parties to the underlying case expended much effort toward settlement, including many meetings attended by attorneys and experts for all parties, and exchanged a great deal of information – but were not successful. The Lower Arkansas district is not a party to those settlement discussions.

Even more significant, Colorado Springs has spent many months (beginning months prior to the start of settlement negotiations) fundamentally restructuring, funding, staffing and improving its MS4 permit program. The City's intensive improvement of its MS4 permit

program follows a change in City Administration. It reflects broader City stormwater control concerns, as well as the federal and state concerns described in the complaint in this enforcement action. For this reason, the City believes the litigation of this enforcement action will focus primarily upon the City's past MS4 program activities, and not upon the City's ongoing MS4 permit program and the City's stormwater actions moving forward.

During the past year the City has budgeted more than $24 million upon its overall stormwater program, including MS4 permit program expenditures. The City will more than double the number of employees in its MS4 permit program over two years, growing its MS4 permit staff from 28 to 65 by December 2017. The City already has reorganized its stormwater program fundamentally and with important substantive results. All these efforts enjoy the full support and approval of the City's Mayor and City Council.

MS4 permit stormwater work on the ground has been extensive during 2016. The City has inspected 27 miles of concrete-lined and natural channels, inspected all 90 publicly maintained stormwater detention facilities, conducted maintenance on six miles of concrete-lined and natural channels (concrete repairs, vegetation removal, debris removal and sediment removal), and completed maintenance in 53 public stormwater detention facilities (debris removal, mowing, tree trimming, sedimentation removal, and structure maintenance). The City's MS4 permit program during the past year has focused upon and attended to each site identified by the federal and state governments during the inspections in 2013 and 2015 that prompted this enforcement action. The City's many fundamental improvements to the MS4 program are described in the City's *Stormwater Program Implementation Plan* (November 2016) (download URL located at: https://coloradosprings.gov/stormwater/page/stormwater-program-

implementation-plan). This stormwater program improvement document is comprehensive and detailed ― more than 460 pages.

These changes and improvements to the City's MS4 permit program are both permanent and legally assured of funding over the next twenty years. To assure these two important stormwater goals, Colorado Springs has entered into an enforceable Intergovernmental Agreement ("IGA") with Pueblo County, Colorado. *Intergovernmental Agreement Between Pueblo County and The City of Colorado Springs and Its Utility Enterprise* (April 27, 2016) (https://coloradosprings.gov/sites/default/files/iga.pdf). The IGA commits to funding a minimum of $460 million over the next twenty years in order to pay for the MS4 permit program and other aspects of the City's stormwater programs. IGA, Section III.A. (stormwater expenditures).

## ARGUMENT

The Lower Arkansas district seeks to intervene on three grounds. It claims an unconditional statutory right to intervene under Fed. R. Civ. P. 24(a)(1) and Section 505(b)(1)(B) of the federal Clean Water Act, 33 U.S.C. § 1365(b)(1)(b) (2016). It claims intervention of right under Fed. R. Civ. P. 24(a)(2). Finally, the district also seeks the Court's permission to intervene under Fed. R. Civ. P. 24(b).

None of these grounds for intervention are available to the district. The statutory right to intervene under Section 505(b)(1)(B) of the Clean Water Act is conditional – and the district cannot satisfy this statutory condition because the district has no legal right under state law to enforce the City's MS4 permit. The district fails to satisfy Fed. R. Civ. P. 24(a)(2) because the interests it seeks to vindicate are outside – and are not regulated by – the City's MS4 permit.

Finally, this Court should withhold permission to intervene because the district's expressed interests will greatly complicate and expand this litigation and because the district's expressed interests are untimely – not yet ripe – in this case.

> **I.** **The Lower Arkansas district fails to satisfy the statutory condition in the federal Clean Water Act for intervention because, under state law, the district is without legal power to enforce the City's MS4 permit.**

The Lower Arkansas district claims a statutory right to intervene under Section 505(b)(1)(B) of the federal Clean Water Act, 33 U.S.C. § 1365(b)(1)(B) (2016). That provision says:

> [In an enforcement action such as this one] any citizen may intervene as a matter of right.

The district mistakenly asserts that the right in this provision is unconditional. To the contrary, the condition the district must satisfy appears in the Act's definition of "citizen." Section 505(g) of the Act, 33 U.S.C. § 505(g) (2016), says:

> . . . the term "citizen" means a person . . . having an interest which is or may be adversely affected.

The condition for intervention under this statute is that the Lower Arkansas district must have an interest that "is or may be adversely affected" by enforcement of the City's MS4 permit. The Lower Arkansas district fails to meet this condition.

The Lower Arkansas district has no interest that is or may be affected by enforcement of the City's MS4 permit because the Lower Arkansas district (a statutory unit of government, a conservancy district formed with authority limited by the General Assembly to duties related to irrigation, C.R.S., § 37-45-109 (2016)) is without power, under state law, to enforce the City's MS4 permit. This legal conclusion follows from Section 25-8-202(7) of the Colorado Water

Quality Control Act. This provision says:

> The commission and the division shall recognize water quality responsibilities of the following state agencies, referred to in this subsection (7) as the "implementing agencies": The . . . state engineer . . . . *Activities subject to the jurisdiction of the implementing agencies that result in discharge to state waters shall be regulated as follows*:
>
> (b) (I) The [Colorado Water Quality Control] division [within CDPHE] shall be *solely responsible for the issuance and enforcement* of permits authorizing point source discharges to surface waters of the state affected by such discharges.

C.R.S. § 25-8-202(7) (2016) (emphasis added).

This provision of state law applies to the Lower Arkansas district. The district seeks to intervene to protect its own water rights and (seemingly)[1] the water rights of its constituents. *E.g.* Motion to Intervene, pp. 2, 3, 4, 10-13. In Colorado, such water rights are subject to the jurisdiction of the Colorado State Engineer, which administers such rights. C.R.S. § 37-80-102 (2016) (administration of water rights) and the jurisdiction of the Colorado Water Courts. C.R.S. §§ 37-92-101, *et seq.* (2016). The utilization of water rights for irrigation, the interest claimed by the District, results in discharges to state waters in the form of return flows (as of course do discharges under the City's MS4 permit, which directly regulates such discharges). C.R.S. § 25-8-103(19) (2016) (state waters include surface and subsurface waters). Finally, the City's MS4 permit directly authorizes point source discharges by the City to surface waters of the state also affected by water rights return flows.

---

[1] Footnote 1 in the Lower Arkansas district's motion to intervene, at page 2, seems to seek intervention by individual private water users and residents within the district. This puzzling approach to intervention and standing appears nowhere else in the district's intervention filings with this Court.

For these reasons, this state law places within CDPHE exclusively the sole jurisdiction to enforce the MS4 permit at issue in this case – as among political subdivisions of the State of Colorado. In this case, the Lower Arkansas district, claiming interests here solely related to state water rights (as it is limited to claiming under its state organic act and charter) is without power or legal right to enforce the City's MS4 permit. The district cannot intervene in this action for this reason.

> **II. The Lower Arkansas district cannot intervene in this action under Fed. R. Civ. P. 24(a)(2) because the interest it seeks to protect – preventing bacterial pollution that affects irrigated crops – is neither an interest regulated by the MS4 permit nor an interest that can be redressed in this enforcement action.**

The interests the Lower Arkansas district seeks to vindicate by intervening in this case focus upon the district's concern about levels of *E. coli* in surface waters that are diverted to satisfy water rights used for irrigation. Proposed Complaint in Intervention, ¶¶ 29-34, 50-51, 68, 89-91, 93. *E. coli* are a type of bacteria, and in water *E. coli* are used as an indicator of pollution caused by the many types of bacteria found in the intestines of humans and other warm-blooded creatures. *See, generally,* U.S. Environmental Protection Agency, *Recreational Water Quality Criteria* 9 (2012) (https://www.epa.gov/sites/production/files/2015-10/documents/rwqc2012.pdf) (use of *E. coli* level as an indicator of fecal material pollution). These bacteria are released in fecal material and can reach watercourses from a broad range of sources.

The Lower Arkansas district's interest in *E. coli* cannot be redressed in this MS4 permit enforcement action. That result is because the City's MS4 permit does not regulate *E. coli*. The City's MS4 permit contains only two duties that concern *E. coli*, and neither duty is regulatory or a part of this enforcement action. First, the City monitors surface waters from time to time to test

for a list of many pollutants. That list includes *E. coli*. Second, the City educates the public about stormwater under its MS4 permit, and a part of that education teaches people to avoid allowing fecal material from pets to enter stormwater flows: the City tells people to pick up after their pets along parks and trails. Most importantly, the City's MS4 permit contains no regulatory limits, no regulatory programs, and no legal restrictions of any other type concerning *E. coli* bacteria. The Lower Arkansas district thus cannot intervene in this MS4 permit enforcement action to redress the interests that it seeks to protect in its motion and complaint.

The Lower Arkansas district also cannot intervene in this case because the interests it seeks to protect are untimely. They are premature. For example, the district apparently wants to insure compliance with rules promulgated under the *Food Safety Modernization Act* ("FSMA"), Pub. L. No. 111-353, 124 Stat 3885 (2011). These 2015 FSMA rules of the U.S. Food and Drug Administration are codified at 21 C.F.R. § 112.44. Motion to Intervene, pp. 11-12.

The FSMA rules include protections for waterborne *E. coli*, but these protections do not regulate food producers until January 26, 2018 and January 26, 2020, depending on the size of the agriculture business. 80 Fed. Reg. 74353, 74528 (Nov. 27, 2015) (compliance dates). Even if, contrary to the facts in this case, the Lower Arkansas district's interest in food protection from *E. coli* had something to do with the City's MS4 permit, this interest is not yet legally ripe. *Los Alamos Study Group v. U.S. Dept. of Energy*, 692 F.3d 1057, 1065 (10th Cir. 2012) (claim not ripe for adjudication when it rests upon contingent future events that may not occur). At this point the Lower Arkansas simply cannot establish that a violation of FSMA has occurred or is imminent from any source associated with Colorado Springs, stormwater, or the City's MS4 permit. The interests it asserts are not timely in this case.

The Lower Arkansas District also seems to claim that its interest in a rulemaking proceeding in the early stages of development before the Colorado Water Quality Control Commission (to set total maximum daily loads and strategies to control waterborne *E. coli*) supports its ability to intervene here. Motion to Intervene, pp. 9-10. That Fountain Creek rulemaking proceeding will not begin for another year or more. It, too, provides no legally ripe matter upon which to base a claim to intervene.

Finally, the Lower Arkansas district also seems to assert that its water rights will be adversely affected by increased stormwater flood flows from Colorado Springs. Motion to Intervene, p. 13. It is difficult to understand how *increased* instream flows might impair the water rights described by the Lower Arkansas district in any legal sense. Nevertheless, the simplest answer to this assertion is that the City's MS4 permit does not address or impose any duty upon the City regarding flood flows. The MS4 permit solely concerns the water quality regulation of discharges of pollutants from the City's MS4 system.

> **III. This Court should decline permission to the Lower Arkansas district to intervene because the district's interests would inject new and unrelated issues into this case, greatly complicating its legal and technical aspects and increasing its expense.**

Under Fed. R. Civ. P. Rule 24(b), the Lower Arkansas district must satisfy several requirements to seek permissive intervention. Its motion must be timely. It must show that it satisfies a conditional right to intervene in a federal statute or that it has a claim with a common question of law or fact with the main action. Finally, the district could seek to intervene based upon a statute it administers. In all cases, though, the Lower Arkansas district must show that it will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ.

9

P., Rule 24(b)(3).

The Lower Arkansas fails all these requirements. As shown above, the district does not satisfy the conditional right to intervene that applies in this action. As is also explained above, the district's motion and complaint pose questions of law and fact that are not common with the main action in this case. Finally, the new legal, technical and scientific aspects of the water rights interests claimed by the Lower Arkansas district will unduly delay and prejudice the City's rights because they will greatly complicate this case and increase its expense.

Granting a motion for permissive intervention rests in the sound discretion of this Court. *Kane County, Utah v. U.S.*, 597 F.3d 1129, 1133 (10th Cir. 2010). The threshold question is whether the intervener has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Where an intervener fails to meet this requirement, the motion should be denied. *Living Waters v. U.S. Bureau of Land Management*, 2014 WL 536946 (D. Colo. 2014) (permissive intervention granted where intervener's defenses directly respond to the claims brought by plaintiff).

In this important sense, the underlying enforcement action brought by the United States and the State of Colorado is narrowly limited. Those original plaintiffs seek a determination of the legal scope of several of the specific duties of the City that are described in the text of its MS4 permit. Within those specific textual permit duties, those plaintiffs seek to define in this action particular tasks and actions that must be undertaken by the City. At that point, this case focuses upon this Court's determination whether the City carried out these specific tasks and actions properly. If not, plaintiffs want the Court to determine an appropriate civil penalty. And, finally, plaintiffs seek the Court's determination whether the City must undertake specific

actions to remedy specific MS4 permit violations.

In stark contrast, and as explained above, the interests and claims asserted by the Lower Arkansas district focus upon asking this Court to determine the scope and content of the district's water rights – and perhaps even the private water rights of the district's constituents. The Lower Arkansas cites a Colorado Supreme Court case that, it claims, creates a state common law of water quality associated with state water rights, *City of Thornton v. City & Cty. of Denver,* 44 P.3d 1019, 1028 (Colo. 2002); Motion to Intervene, p. 4. But the district then apparently disclaims any desire to seek supplemental jurisdiction in this court over these new water rights claims. Proposed Complaint in Intervention, Prayer for Relief.

In any event, the public and private water rights interests asserted by the Lower Arkansas district share no common questions of law or fact with the technical MS4 permit claims brought by the United States and the State of Colorado. Indeed, state water rights issues ordinarily are adjudicated in state water courts and not in federal District Court. *See* C.R.S., § 37-92-203 (2016) (exclusive jurisdiction of state water courts); *Ft. Lyon Canal Co. v. Catlin Canal Co.*, 642 P.2d 501 (Colo. 1982) (legal interests in water rights adjudicated by state water courts).

The Lower Arkansas district's interests and claims would inject broad new issues into this case, and these new issues would increase complexity, expense and delay. This case is already paid for by three sets of taxpayers, supporting three separate governments, to litigate the claims in the underlying enforcement action complaint. The Lower Arkansas district would substantially increase expenses to those federal, state and local taxpayers, of course, and then impose its own additional costs upon its overlapping group of district taxpayers.

The Lower Arkansas district apparently would require discovery and expert analysis of

over the nearly two hundred miles of Fountain Creek and the Arkansas River contained within the district. The district would focus on determining whether the City is responsible (apparently beyond the terms of the MS4 permit) for levels of *E. coli* or other pollutants in the Fountain Creek and the Arkansas River. The additional water rights claims of the district would require that same focus, too, in order to determine if legally protected public or private rights to divert water under state law are affected by the district's water quality concerns.

None of these issues concern – in any way – how the City has operated its stormwater program under its MS4 permit. None is related to funding and staffing the City has committed to its MS4 permit program, how the City conducted review of new development within its boundaries, whether construction program requirements for storm water facilities were sufficient, or whether the City might be liable for civil penalties, as addressed in the underlying complaint. Consideration of the Lower Arkansas district's claims and interests will shed no light on the facts or legal issues involved with the City's MS4 permit. The Lower Arkansas district's unrelated claims will be expensive to litigate and will unduly delay consideration of the original claims in the original complaint. *City of Stillwell v. Ozarks Rural Elec. Coop.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (delay).

Finally, the federal government and the State of Colorado adequately represent the interests of the Lower Arkansas district, and intervention should be denied for that reason. *Tri-State Generation & Transmission Assoc., Inc. v. New Mexico Public Regulation Comm.*, 787 F.3d 1068, 1072 (10th Cir. 2015) (where an existing party adequately represents the interests of an applicant for intervention, the motion should be denied). As described above, the Colorado General Assembly has purposely withheld from the Lower Arkansas district (and all other state

political subdivisions) the right to enforce the City's MS4 permit exactly because the State, through CDPHE, solely represents the district's interest in MS4 permit enforcement. The General Assembly never granted the district affirmative statutory power to enforce MS4 permits. And, here, according to the Lower Arkansas' motion, the interests of the United States and the State of Colorado in enforcing both the FMSA and *E. coli* state water quality standards are identical because the *E. coli* standard under both state water quality standards and under the FMSA is identical. Motion to Intervene, p. 11. Where the interests of an existing party and the applicant for intervention are identical a presumption arises of adequacy of representation. *Coalition of Arizona/New Mexico Ctys. For Stable Economic Growth v. Dept. of Interior*, 100 F.3d 837, 845 (10th Cir. 1996).

WHEREFORE, the City of Colorado Springs respectfully requests this Court to deny the Lower Arkansas district's motion to intervene.

Respectfully submitted this 22nd day of December 2016.

                                                                                      RYLEY CARLOCK & APPLEWHITE

                                                                                      ___*s/Richard C. Kaufman*_____
                                                                                      Alan J. Gilbert
                                                                                      Richard C. Kaufman
                                                                                      1700 Lincoln Street
                                                                                      Suite 3500
                                                                                      Denver, CO 80203
                                                                                      (303) 863-7500
                                                                                      Email: agilbert@rcalaw.com
                                                                                                rkaufman@rcalaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2016, a true and correct copy of the foregoing **OPPOSITION OF THE CITY OF COLORADO SPRINGS TO MOTION TO INTERVENE OF THE LOWER ARKANSAS VALLEY WATER CONSERVANCY DISTRICT** was served via the CM-ECF system upon the following:

Heidi Hoffman Esq.
Devon Ashley Ahearn, Esq.
U.S. Department Justice, CO Environmental U.S. Division
heidi.hoffman@usdoj.gov
devn.ahearn@usdoj.gov
*Attorneys for Plaintiff United States of America*

Peter D. Nichols, Esq.
Melanie B. Lewis, Esq.
Leah K. Martinsson, Esq.
Megan Gutwin, Esaq.
Berg Hill Greenleaf Ruscitti, LLP
pdn@bhgrlaw.co
mbl@bhgrlaw.com
lkm@bhgrlaw.com
mg@bhgrlaw.com

*Attorneys for Movant, Lower Arkansas Valley Water Conservancy District*

Margaret A. Parish, Esq.
Colorado Attorney General's Office
Meg.parish@coag.gov

*Attorney for Plaintiff The State of Colorado*


*Ann I. Palius*