IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02745-RPM

UNITED STATES OF AMERICA, and
THE STATE OF COLORADO,

    Plaintiffs,

v.

CITY OF COLORADO SPRINGS, COLORADO

    Defendant.

---

**REPLY TO THE CITY OF COLORADO SPRINGS' OPPOSITION TO MOTION TO INTERVENE OF THE LOWER ARKANSAS VALLEY WATER CONSERVANCY DISTRICT**

---

The Lower Arkansas Valley Water Conservancy District (the "Lower Ark District" or "District"), through its undersigned counsel submits this Reply to the City of Colorado Springs' Opposition to its Motion to Intervene (the "Reply") as follows:

## I. INTRODUCTION

The Court should grant the Lower Ark District's Motion to Intervene because the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1365, gives citizens like the District an unconditional statutory right to intervene in enforcement actions, and the City offers no convincing reason to deny this right to the Lower Ark District. Instead, the City's Response in Opposition ("Opposition") distorts the intervention analysis in three ways. First, the City incorrectly argues that the CWA does not grant the Lower Ark District an unconditional right to intervene in this action. Second, the City conflates the District's interests that are adversely

affected by the City's Permit violations with the District's legal claims. Third, the City diverts the Court's attention to state law issues that have no bearing on the District's right to intervene under the CWA. Because none of the City's arguments survives scrutiny, and for the reasons stated in the Motion to Intervene, the Court should allow the Lower Ark District to intervene in this action under Fed. R. Civ. P. 24(a) or, in the alternative, pursuant to Rule 24(a)(2) or Rule 24(b).

### A. The CWA grants the Lower Ark District an unconditional statutory right to intervene.

The CWA allows a citizen such as the Lower Ark District either to bring its own action under the CWA or to intervene as of right in an enforcement action brought by EPA or the State under the Act so long as the citizen has an interest that may be adversely affected by violations of the Act. The Lower Ark District has interests that may be adversely affected by the City's failure to comply with the terms of its MS4 Permit and the CWA, and no other "condition" stands in the way of its intervention.

The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). While the CWA charges states and the federal government with primary responsibility for enforcing the act, "private citizens provide a second level of enforcement and can serve as a check to ensure the state and federal governments are diligent in prosecuting Clean Water Act violations." *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 637 (6th Cir. 2007).

Section 505 of the CWA authorizes citizen suits to enforce the provisions of the Act. 33 U.S.C. § 1365. In order to commence a citizen suit, a plaintiff must first file a notice of intent to sue with the EPA, the State, and the alleged violator sixty days prior to filing suit. 33 U.S.C. §

1365(b)(1)(A).  The Lower Ark District sent such a notice of intent on November 19, 2014, at which time it had the right to file a citizen suit in order to enforce the terms of the City's MS4 Permit and the CWA.  Ex. 1 to Lower Ark District's Mot. to Intervene, ECF No. 9-2.

If the EPA or State commences its own action, however, citizens may no longer file their own suits.  33 U.S.C. § 1365(b)(1)(B).  Precisely because citizens are so precluded from filing their own suits, the CWA also grants citizens a statutory right to intervene once the EPA or State initiates an enforcement action.  *Id*. (where "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action … in any such action in a court of the United States any citizen may intervene as a matter of right."); *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc*., 484 U.S. 49, 50 (1987) (Section 505's "bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action.  The legislative history of the Act reinforces this view of the role of the citizen suit.").

The Lower Ark District has an unconditional statutory right to intervene under Rule 24(a) and the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B), contrary to the City's assertion.  In *United States v. N. Arapaho Tribe*, the court found that the intervenor in a CWA case had "an *unconditional* right to intervene because it seeks to intervene as a plaintiff." Civil Action No. 10-cv-093-J, 2010 U.S. Dist LEXIS 146894 *5 (D. Wyo. Dec 15, 2010) (emphasis added).  The Northern Arapaho Tribe intervened in that case as a citizen to ensure that the regulatory agencies enforced the CWA, which it was entitled to do *unconditionally* as a matter of statutory right.  *Id*.  The court explained that "the threshold issue of whether this statutory right to intervene is unconditional in this matter is settled provided intervenor's motion was timely filed."  *Id*.  Here,

there is no argument that the Lower Ark District's motion was not timely filed, so the District meets the timeliness requirement. Like the Tribe in *North Arapaho Tribe*, the District seeks to intervene in this case to ensure that the EPA and State enforce the CWA, and thus easily satisfies the requirements for unconditional statutory intervention.

### B. The Lower Ark District's interests as a citizen are distinct from the relief it seeks.

The City conflates the Lower Ark District's interests, as described in its Motion to Intervene, with its claims, which are equivalent to the Plaintiffs' claims as set forth in its proposed Complaint. Lower Ark District's Compl. ¶¶ 73, 104, ECF No. 9-1. As described in its Motion to Intervene, the Lower Ark District is a citizen within the meaning of the CWA because the City's MS4 Permit violations adversely affect the District's interests. Section 505 of the CWA grants any citizen an unconditional right to intervene. 33. U.S.C. § 1365(b)(1)(B). For the purposes of the CWA, a citizen is "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1362(5).

The District's Motion to Intervene explains how the City's Permit violations impair water quality in Fountain Creek, which adversely affects the Lower Ark District's interests in the use of that water. For example, high *E. coli* levels associated with the City's stormwater discharges evidence the City's failure to control pollutants at their source to the maximum extent practicable by using best management practices as required by its Permit and the CWA. High levels of *E. coli* – a human pathogen – also impair the recreational use of the waterbody, which is listed as impaired for *E. coli*. 5 Colo. Code Regs. § 1002-93.3 (2016). In short, the Lower Ark District qualifies as a citizen entitled to intervene because the City's Permit violations adversely affect the District's interests. *See* Lower Ark District's Mot. to Intervene, at 3-4, 11-12, ECF No. 9

4

(detailing the Lower Ark District's mandate to conserve water resources within the District for their greatest beneficial use, which includes recreation and irrigating crops for human consumption). The Lower Ark District has an interest in water of suitable quality for decreed beneficial uses under state law.

Although the District discussed water quality issues to describe its interests that are adversely affected by the City's violations of its Permit and the CWA, the District's Complaint is not asking the Court to enforce any rights it may have under state law or to address compliance with the federal Food Safety Modernization Act. Rather, the District seeks protection of its interests via the same legal mechanism as the EPA and the State, namely enforcement of the City's MS4 Permit and the CWA.[1] Simply stated, the District seeks the same outcome as the EPA and State, which is for the City to comply with its Permit and reduce pollutants at their source to the maximum extent practicable using best management practices, as required by the City's Permit and the CWA, which would remedy the adverse effects of the City's stormwater discharges on the District's interests.[2] For these reasons, the Court may find that the City's intervention would not delay or prejudice the adjudication of the original parties' rights and that intervention is warranted.

---

[1] That the District seeks the same outcome as the EPA and State does not mean, as the City asserts, that, for purposes of the Rule 24(a)(2) intervention analysis, the District's interests are adequately represented by the EPA and State. As explained in the District's Motion to Intervene, at 13-15, the District's unique public and private interests in ensuring water quality that will maximize the greatest beneficial use of limited water resources are distinct from and cannot be adequately represented by the EPA and State, which have competing constituent concerns and policy demands.

[2] Because the District brings claims similar to those of the Plaintiffs and seeks the same outcome as the Plaintiffs, allowing the District to intervene will not increase the complexity, scope or expense of this litigation as the City incorrectly contends. In addition, the City's argument about taxpayer costs associated with this enforcement action is a red herring. Had the City's taxpayers been willing to fund an adequate stormwater management plan as required by its Permit and the CWA, this action would not be necessary. Instead, the City's taxpayers have enjoyed a tax holiday of over 100 million dollars since the repeal of the stormwater management fee in 2009, paying less than 10 percent as much as other Front Range municipal taxpayers to control stormwater.

### C. The Lower Ark District is entitled to intervene under federal law to enforce the CWA; state law is irrelevant.

The CWA unquestionably does not require a citizen to have a legal right under state law to file a citizen suit or to intervene in an enforcement action, and the City's assertion that state law defines the scope of permissible citizen suits under the CWA turns the preemptive nature of the federal CWA on its head. Contrary to the City's assertion, "Congress intended the [CWA] to establish an all-encompassing program of water pollution regulation … [and] to dominate the field of pollution regulation." *International Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987) (internal citations omitted). The purpose of the CWA was "to establish a *comprehensive* long-range policy for the elimination of water pollution …. No Congressman's remarks on the legislation was complete without reference to the comprehensive nature of the [CWA]." *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 318 (1981) (emphasis in original) (internal citations omitted). Although the federal government may delegate administration of the CWA to the states (as EPA has delegated the NPDES permitting program here), the CWA establishes the minimum requirements for state implementation, and states may only impose more stringent requirements. 33 U.S.C. §§ 1342(b), 1370(1)(B); 40 C.F.R. § 123.25; *International Paper Co.*, 479 U.S. at 490.

The City's Opposition ignores the preemptive nature of the CWA, misdirecting the court instead to irrelevant state law. Although the State has adopted statutes and regulations necessary to exercise delegated authority for the NPDES program under the CWA, the City fails to accept that its Permit is fundamentally controlled by federal – not State – law.

The City's argument that only an entity with "power, under state law, to enforce the City's MS4 Permit," (Opposition, at 5), lacks support in the plain language definition of

"citizen" under Section 505 or in ample precedent allowing citizen intervention. *See, e.g.*, *Gasco Energy, Inc. v. EPA*, Civil Action No. 12-cv-01658, 2013 WL 5716906 (D. Colo. Sept. 4, 2013) (Non-profit Southern Utah Wilderness Alliance granted intervention under CWA); *United States v. Metropolitan St. Louis Sewer District*, 883 F.2d 54 (8th Cir. 1989) (reversing district court's denial of Missouri Coalition for the Environment's motion to intervene under the CWA because "[i]ntervention is available to Missouri Coalition as a matter of right."); *United States v. City of Baton Rouge*, Civil Action No. 01-cv-978 (M.D. La. April 20, 2012) (Court ruled that Concerned Citizens of University Place Subdivision and Louisiana Environmental Action Network had unconditional statutory right to intervene under CWA).

In *Metropolitan St. Louis Sewer Dist.*, for instance, the Missouri Coalition for the Environment requested intervention in a CWA case because it alleged that many of its members "visit, cross, and frequently observe the bodies of water…. and that from time to time those members use these waters for recreational purposes." 883 F.2d at 56. The Missouri Coalition simply asserted its right as a citizen under the CWA and did not rely on any legal rights under state law. In fact, the group's complaint essentially incorporated the EPA's allegations by reference, which the appellate court found was perfectly aligned with intervention as a matter of right under the CWA. *Id*. Here, the Lower Ark District's allegations in its proposed Complaint and NOI similarly explicitly align with EPA and the State's. Lower Ark District's Compl. ¶¶ 72, 73, 103, 104.

The District makes no state law claims in its Complaint. The Lower Ark District simply seeks to intervene as a matter of right as a citizen under federal law to ensure that the EPA and State enforce the City's MS4 Permit and the CWA. The City's discussion of irrelevant state law

7

and its associated assertions that intervention would "inject broad new issues into this case" are distractions that obfuscate the District's clear statutory right to intervene.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the Lower Ark District's Motion to Intervene and accept the proposed Complaint.

RESPECFULLY SUBMITTED, this 5th day of January 2017.

*s/ Peter D. Nichols*
*Peter D. Nichols*
*Megan Gutwein*
*Carrell C. Doyle*
*Melanie B. Lewis*
*Leah K. Martinsson*

Berg Hill Greenleaf Ruscitti LLP
1712 Pearl Street
Boulder, CO 80302
Telephone: (303) 402-1600
E-mail: pdn@bhgrlaw.com
mg@bhgrlaw.com
ccd@bhgrlaw.com
mbl@bhgrlaw.com
lkm@bhgrlaw.com

Attorneys for Movant, Lower Arkansas Valley Water Conservancy District

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 5, 2017, the foregoing **REPLY TO THE CITY OF COLORADO SPRINGS' OPPOSITION TO MOTION TO INTERVENE OF THE LOWER ARKANSAS VALLEY WATER CONSERVANCY DISTRICT** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Heidi Hoffman
U.S. Department of Justice, CO Environmental Division
heidi.hoffman@usdoj.gov
*Attorney for Plaintiff United States of America*

Devon Ashley Ahearn
U.S. Department of Justice, DC7611
devon.ahearn@usdoj.gov
*Attorney for Plaintiff United States of America*

Margaret A. Parish
Colorado Attorney General's Office
meg.parish@coag.gov
*Attorney for Plaintiff The State of Colorado*

Alan J. Gilbert
Ryley Carlock & Applewhite, P.A., Denver, CO
agilbert@rcalaw.com
*Attorney for City of Colorado Springs, Colorado*

Richard Carl Kaufman
Ryley Carlock & Applewhite, P.A., Denver, CO
rkaufman@rcalaw.com
*Attorney for Defendant, City of Colorado Springs, Colorado*

                                              *s/ Meribeth Wheatley*