**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

No: 1:16-cv-2745-RPM-KMT

UNITED STATES OF AMERICA and
THE STATE OF COLORADO,

       *Plaintiffs*,

v.

CITY OF COLORADO SPRINGS, COLORADO,

    *Defendant*.

---

**ANSWER OF THE CITY OF COLORADO SPRINGS**

---

The City of Colorado Springs answers the complaint of the United States of America

and the State of Colorado as follows. Numbered paragraphs below correspond to numbered

paragraphs in the Complaint.

<u>GENERAL RESPONSES</u>

A.    Allegations in the Complaint that are not specifically admitted in this Answer are

denied.

B.    Except as specifically admitted, the City denies all allegations as to the content of

federal, state or local law and the application of those laws in this case.

C.    The term "Stormwater Program" is ambiguous in the circumstances alleged in the

Complaint and all allegations using that term are denied for this reason.  The City undertakes

several activities that are a part of its overall Stormwater Program, yet are not aspects of the

City's compliance with its MS4 permit. These include, but are not limited to, the City's separate Capital Projects Program, in which it builds large, permanent stormwater controls outside its MS4 system, and its widely varied stormwater control activities that take place in creeks and streams that are not part of its MS4 system.

NATURE OF ACTION

1.      The City admits the allegations in Paragraph 1.

2.      The City admits the allegations in Paragraph 2, except the City denies that the permits at issue in this matter are "National Pollutant Discharge Elimination System" permits. The permits at issue are Colorado Discharge Permit System ("CDPS") permits issued by the State of Colorado under state law, not federal law.

3.      The City admits the allegations in Paragraph 3 that this Court has jurisdiction over this action under 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1331, 1345, and 1355. The City denies that this Court has supplemental jurisdiction over portions of this action under 28 U.S.C. § 1367.

4.      The City admits in Paragraph 4 that venue is proper in this Court. The City admits that the City is located in this District, the claims in this matter arise in this District, and the acts at issue occurred in this District. The City denies the allegation as to 28 U.S.C. § 1391 because venue is "otherwise provided by law."

5.      The City lacks knowledge and information sufficient to form a belief about the truth of the allegation in Paragraph 5   It is denied.

6.       The City denies the allegations in Paragraph 6, except that the City admits the State of Colorado has joined this action as a plaintiff.

7.      The City admits the allegations in Paragraph 7.

8.      The City admits the allegation is in Paragraph 8.

9.      The City admits the allegations in Paragraph 9.

STATUTORY AND REGULATORY BACKGROUND

**Clean Water Act NPDES Program**

10.     Paragraph 10 is an assertion of law and is denied.

11.     Paragraph 11 is a general assertion of law and is denied.

12.     Paragraph 12 is a general assertion of law and is denied.  The City admits that the State of Colorado has been and is currently authorized to administer the CDPS program.

13.     The City admits that EPA may enforce state-issued CDPS permits. The allegations in Paragraph 13 are otherwise denied.

14.     The allegations of law in Paragraph 14 are denied.

15.     The allegations of law in Paragraph 15 are denied.

**Clean Water Act Stormwater Discharge Program**

16.     The City admits that stormwater at issue is created when precipitation falls, flows over land, and reaches creeks and streams.   The remaining allegations in Paragraph 16 are denied.

17.     The City denies the allegations in Paragraph 17.

18.     The City denies the allegations of law in Paragraph 18.

19.     The City denies the allegations of law in Paragraph 19.

20.     The City denies the allegations of law in Paragraph 20.

21.     The City admits that federal regulations define the term "municipal separate storm sewer."  The City otherwise denies the allegations of law in Paragraph 21.

22.     The City admits the existence of federal regulations that address stormwater management programs.  The City otherwise denies the allegations of law in Paragraph 22.

23.     The City admits that "Best Management Practices" ("BMPs") is a term defined in federal regulations.  The City otherwise denies the allegations of law in Paragraph 23.

GENERAL ALLEGATIONS

**The City's Municipal Separate Storm Sewer System (MS4)**

24.     The City admits the allegations in Paragraph 24.

25.     The City admits it is a Phase I MS4 system under law. The City admits its population exceeds 100,000 and is approximately 460,000.   The remaining allegations in Paragraph 25 are denied.

26.     The City denies the allegations in Paragraph 26.

27.     The City denies the allegations in Paragraph 27.

28.     The City admits that waters flow from the City's MS4 to the creeks and streams listed in Paragraph 28.  The City denies that all such flows are "discharges," a term of art, as alleged in in Paragraph 28.

29.     The City admits that waters described in Paragraph 28 are state waters and that the term "state waters" is defined in the Colorado Water Quality Control Act as described in Paragraph 29.

30.     The City denies the allegations in Paragraph 30 as to "other waters," but admits the current descriptions of Fountain Creek and Monument Creek.   The City admits the

4

allegations in Paragraph 30 concerning the Arkansas River.

31.     The City denies that all flows of water from its MS4 system are discharges of pollutants. It denies the remaining allegations of Paragraph 31.

**The City's MS4 Permit**

32.     The City denies the allegation in Paragraph 32 that a CDPS permit is a NPDES permit.  The City admits the remaining allegations in Paragraph 32.

33.     The City admits that it has had two prior versions of its MS4 permit before its current MS4 permit and that all have been designated Permit No. COS-000004 in the CDPS system in the State of Colorado.  The historic and current MS4 permits contain significantly differing conditions and other provisions, differences that are ignored by Plaintiffs in the Complaint but that are important in this lawsuit.

34.     The City admits that its current 2011 MS4 permit requires development and compliance with a CDPS Stormwater Management Plan and that the 2011 permit has other provisions.  The City admits that it must comply with its 2011 MS4 permit.  The remaining allegations in Paragraph 34 are denied.

35.     The City admits that a Stormwater Management Plan is an important aspect of the 2011 MS4 Permit.  The City denies the remaining allegations in Paragraph 35.

36.     The City admits the allegations in Paragraph 36.

37.     The City admits the allegations in Paragraph 37.

38.     The City admits the text of language contained of Part I.B. of the 2011 MS4 permit but denies that the allegations in Paragraph 38 properly characterize the application of that permit language to this case.

39.     The City admits that it has developed documents and other things as part of its Stormwater Management Program. The City denies the remaining allegations in Paragraph 39.

40.     The City admits that it must comply with its Stormwater Management Program as approved by the State of Colorado from time to time.  The City admits it must comply with its MS4 permit as that permit has existed from time to time.  The City denies the remaining allegations of Paragraph 40.

41.     The City admits the allegations in Paragraph 41.  The City states that the February, 2013 inspection described is called an "inspection" in the report issued after its completion, not an "audit."

42.     The City admits the allegations in Paragraph 42.

FIRST CLAIM FOR RELIEF
(Stormwater Management Program Requirements)

43.     The responses in the foregoing paragraphs are incorporated herein by reference.

44.     The City admits the allegations in Paragraph 44.

45.     The City admits the allegations in Paragraph 45.

46.     The City admits the allegations in Paragraph 46.

47.     The City does not understand the meaning of the phrase "Pursuant to these requirements" in Paragraph 47 and therefore denies the allegations in Paragraph 47.

48.     The City denies the allegations in Paragraph 48.

49.     The City admits the allegations of Paragraph 49, except that Ordinance No. 05-192, creating the SWENT, was finally passed, adopted and approved on December 13, 2005.

50.     The City admits the allegations of Paragraph 50.

51.    The City admits that, by Resolution No. 299-09 (December 8, 2009), the City ended the collection of service fees for the SWENT as of January 1, 2010.

52.    The City admits the allegations in Paragraph 52 regarding the City's draft Stormwater Program Implementation Plan ("SPIP").  The City's draft SPIP was replaced by the City's final SPIP dated November 2016.

53.    The City admits the allegations in Paragraph 53, but only to the extent that the budget number stated comprises only the MS4 Permit compliance portion of the City's stormwater program.  The City's estimated overall stormwater program costs are much greater than the allegation suggests, totaling more than $20 million annually.  The term "stormwater program" as used in the Complaint is ambiguous in this regard, and that ambiguity is important in this case.

54.    The City denies the allegations in Paragraph 54.

55.    The City denies the allegations in Paragraph 55.

56.    The City denies the allegations in Paragraph 56.  These allegations do not restate accurately the City's answer to Question 15 EPA's information request dated March 29, 2016.

57.    The City denies the allegations in Paragraph 57.

58.    The City denies the allegations in Paragraph 58.

59.    The City denies the allegations in Paragraph 59.

60.    The City denies the allegations in Paragraph 60.

61.    The City denies the allegation in Paragraph 61.

62.    The City denies the allegations in Paragraph 62.

## SECOND CLAIM FOR RELIEF
### (Adoption of 2000 Cottonwood Creek DBPS and "Prudent Line" Concept)

63.     The responses in the foregoing paragraphs are incorporated herein by reference.

64.     The City admits it must comply with its 2011 Permit and the conditions it contains, including conditions concerning its Stormwater Management Plan approved by the State of Colorado.  The City denies the remaining allegations in Paragraph 64.

65.     The City admits that the 2011 Permit contains the provision quoted in Paragraph 65.  The City does not understand the meaning of the word "properly" in the allegation in Paragraph 65 in the circumstances of the Complaint, and therefore denies the remaining allegations in Paragraph 65.

66.     The City admits that the quoted language in Paragraph 66 is an excerpt from language contained in the 2011 Permit.  The City denies the remaining allegations in paragraph 66.

67.     The City admits that the quoted language in Paragraph 67 is an excerpt from language contained in the 2011 Permit.  The City denies the remaining allegations in paragraph 67.

68.     The City admits that the quoted language in Paragraph 68 is an excerpt from language contained in another subsection of the 2011 Permit.

69.     The City admits that the quoted language in Paragraph 69 is an excerpt from language contained in the 2011 Permit.  The City denies the remaining allegations in paragraph 69.

70.     The City denies the allegations in paragraph 70.

71.     The City admits that the quoted language in Paragraph 71 is an excerpt from language contained in the 2011 Permit.  The City denies the remaining allegations in Paragraph 7

72.     The City denies the allegations in Paragraph 72 because the Complaint does not accurately characterize or explain the municipal code provisions quoted and cited.

73.     The City admits that language quoted in Paragraph 73 is an excerpt from general introductory language in the City's two Drainage Criteria Manuals that were in existence separately over a period of more than ten years.  The City denies that this general language, quoted out of context in the Complaint, meaningfully explains any scientific or technical concepts that are useful in this case.

74.     The City admits that language quoted in Paragraph 74 is an excerpt from general introductory language in the City's two Drainage Criteria Manuals that were in existence separately over a period of more than ten years.  The City denies that this general language, quoted out of context, meaningfully explains any scientific or technical concepts that are useful in in this case.

75.     The City admits that language quoted in Paragraph 75 is an excerpt from general introductory language in the City's two Drainage Criteria Manuals that were in existence separately over a period of more than ten years.  The City denies that this general language, quoted out of context, meaningfully explains any scientific or technical concepts that are useful in in this case.

76.     The City admits that different Four-Step Processes exist in the City's two Drainage Criteria Manuals cited in Paragraph 76.  The City denies the remaining allegations in Paragraph 76.

77.     The City admits that language quoted in Paragraph 77 is an excerpt from general introductory language in the City's two Drainage Criteria Manuals that were in existence separately over a period of more than ten years.  The City denies that this general language, quoted out of context, meaningfully explains any scientific or technical concepts that are useful in in this case.

78.     The City admits that language quoted in Paragraph 78 is an excerpt from the City's 2014 Drainage Criteria Manual.  The City denies that this general language, quoted out of adequate context, meaningfully explains a concept useful in in this case.

79.     The City admits that the language quoted in Paragraph 79 exists on a City website that was checked on November 11, 2016.

80.     The City admits that the language quoted in Paragraph 80 accurately contains an excerpt from a portion of the City's Code as of November 11, 2016.  The City denies the remaining allegations in Paragraph 80.

81.     The City admits the adoption of Resolution No. 104-00 as alleged in Paragraph 81.  The City denies the remaining allegations in Paragraph 81.

82.     The City admits that the quotation in Paragraph 82 accurately contains an excerpt from a portion of the City Code — related to zoning and not the issues in this case — as of November 11, 2016.   The City denies the remaining allegations in paragraph 82.

83.     The City admits that the 2000 Drainage Basin Planning Study for the Cottonwood Creek basin replaced an earlier Drainage Basin Planning Study in 1994.  The City admits that the 2000 Drainage Basin Planning Study changed how the City planned to achieve stability of Cottonwood Creek, as compared to its earlier plan in 1994 which incorporated regional detention

ponds, drop structures and other means.  The City denies the remaining allegations in Paragraph 83.

84.     The City admits that the 2000 Drainage Basin Planning Study adopts a "prudent line" planning approach to the stabilization of Cottonwood Creek.  The City denies all remaining allegations in Paragraph 84.  The City states that the adoption of the 2000 Drainage Basin Planning Study in Cottonwood Creek did not alter the use of water quality controls in the Cottonwood Creek Basin needed for MS4 Permit compliance, and that those water quality controls are in place.

85.     The City admits the allegations in Paragraph 85 only to the extent described in the City's responses to Paragraphs 83 and 84, just above.  The City denies all remaining allegations in Paragraph 85.

86.     The City admits that the expense to stabilize Cottonwood Creek changed from the 1994 planning approach to the 2000 planning approach in Drainage Basin Planning Studies.  The City admits that the language quoted in Paragraph 86 is an excerpt of language contained in the 2000 Drainage Basin Planning Study.  The City denies all remaining allegations in Paragraph 86.

87.     The City admits that it is the process of completing a new Cottonwood Creek Drainage Basin Planning Study.  The City denies the remaining allegations in Paragraph 87.

88.     The City denies the allegations in Paragraph 88.

89.     The City denies the allegations in Paragraph 89.

90.     The City denies the allegations in Paragraph 90.

91.     The City denies the allegations in Paragraph 91.

92.     The City denies the allegations in Paragraph 92.

93.     The City denies the allegations in Paragraph 93.

94.     The City denies the allegations in Paragraph 94.

95.     The City denies the allegations in Paragraph 95.

THIRD CLAIM FOR RELIEF
(Water Quality Control Structures Placed in State Waters)

96.     The responses of the City in the foregoing paragraphs are incorporated herein by reference.

97.     The City admits that it is required to comply with its approved MS4 Permit Stormwater Management Program as that program has been approved by the State of Colorado. The City denies the remaining allegations in Paragraph 97.

98.     The City admits that Paragraph 98 contains an excerpt from the City's 2011 Permit. The City does not understand the use of the word "properly" in this allegation. The City therefore denies the remaining allegations in Paragraph 98.

99.     The City admits that Paragraph 99 quotes accurately an excerpt from the City's 2011 Permit. The City denies the remaining allegations in paragraph 99.

100.    The City admits that Paragraph 100 quotes and combines excerpts from the City's 2011 Permit. The City denies the remaining allegations in Paragraph 100.

101.    The City denies the allegations in Paragraph 101.

102.    The City admits that Paragraph 102 contains an excerpt from the City's 2011 Permit. The City denies the remaining allegations in paragraph 102.

103.    The City admits that Paragraph 103 contains an excerpt from the City's 2011 Permit. The City denies the remaining allegations of Paragraph 103.

104.     The City denies the allegations in Paragraph 104.

105.     The City admits that Paragraph 105 contains an excerpt from the 2002 Drainage Criteria Manual.  The City denies that this quote, which is taken out of context, is meaningful in the circumstances of this case, and therefore denies the remaining allegations in Paragraph 105.

106.     The City admits that Paragraph 106 contains excerpts from the 2014 Drainage Criteria Manual.  The City denies that these quotes, which are taken out of context, are meaningful in the circumstances of this case.  The City therefore denies the remaining allegations in Paragraph 106.

107.     The City admits that its 2002 and 2004 Drainage Criteria Manuals contain descriptions of different versions of the Four-Step Process.  The City denies the remaining allegations in Paragraph 107.

108.     The City denies the allegations in Paragraph 108.

109.     The City denies the allegations in paragraph 109.

110.     The City admits that Sand Creek Pond No. 1 is a large, City-owned flood control and detention basin near Constitution Avenue.  Sand Creek Pond No. 1 contains water quality control features.  The City denies the remaining allegations in Paragraph 110.

111.     The City denies the allegations in Paragraph 111.

112.     The City denies the allegations in Paragraph 112.

113.     The City denies the allegations in Paragraph 113.

114.     The City denies the allegations in Paragraph 114.

115.     The City denies the allegations in Paragraph 115.

116.     The City denies the allegations in Paragraph 116.

117.    The City denies the allegations in Paragraph 117.


FOURTH CLAIM FOR RELIEF
(Stormwater Controls and Water Quality Capture Volume)

118.    The City's responses in the foregoing paragraphs are incorporated herein by reference.

119.    The City admits that it is required to comply with its approved Stormwater Management Plan.  The remaining allegations in Paragraph 119 are denied.

120.     The City admits that Paragraph 120 contains an excerpt from the City's 2011 Permit.  The City does not understand the meaning of the word "properly" as it is used in this allegation.  The City therefore denies the remaining allegations in Paragraph 120.

121.    The City admits that Paragraph 121 contains an excerpt from the City's 2011 Permit. The City denies the remaining allegations in paragraph 121.

122.    The City admits that Paragraph 122 contains excerpts from various paragraphs in the City's 2011 Permit.  The City denies that these excerpts can be read together as implied in Paragraph 122. The City denies the remaining allegations in paragraph 122.

123.    The City admits that Paragraph 123 contains an excerpt from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 123.

124.    The City admits that Paragraph 124 contains an excerpt from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 124.

125.    The City denies the allegations in Paragraph 125.

126.    The City admits that Paragraph 126 contains excerpts from the 2002 Drainage

Criteria Manual. The City denies that these quotes, which are taken out of context, are meaningful in the circumstances of this case. The City denies the remaining allegations in Paragraph 126.

127. The City admits that Paragraph 127 contains excerpts from the 2002 Drainage Criteria Manual. The City denies that these quotes, which are taken out of context, are meaningful in the circumstances of this case. The City denies the remaining allegations in Paragraph 127.

128. The City admits that Paragraph 128 contains an excerpt from the 2002 Drainage Criteria Manual. The City denies the remaining allegations in paragraph 128.

129. The City denies the allegations in Paragraph 129.

130. The City denies the allegations in Paragraph 130.

131. The City admits that Paragraph 131 contains excerpts from the 2002 and 2014 Drainage Criteria Manuals. The City denies the remaining allegations in Paragraph 131.

132. The City admits that Paragraph 132 contains excerpts from the City Code of Colorado Springs. The City denies the remaining allegations in Paragraph 132.

133. The City admits that Paragraph 133 contains an excerpt from the City Code of Colorado Springs. The City denies remaining allegations in Paragraph 133.

134. The City admits that Paragraph 134 contains an excerpt from the City Code of Colorado Springs. The City denies remaining allegations in Paragraph 134.

135. The City denies the allegations in Paragraph 135.

136. The City denies the allegations in Paragraph 136.

137. The City denies the allegations in Paragraph 137.

138.     The City denies the allegations in Paragraph 138.

139.     The City denies the allegations in Paragraph 139.

140.     The City denies the allegations in Paragraph 140.

141.     The City denies the allegations in Paragraph 141.

142.     The City denies the allegations in Paragraph 142.

143.     The City denies the allegations in Paragraph 143.

FIFTH CLAIM FOR RELIEF
(Post-Construction BMPs — Design, Approval, Installation)

144.     The responses in the foregoing paragraphs are incorporated herein by reference.

145.     The City admits that it is required to implement and enforce its approved Stormwater Management Plan under its 2011 Permit.  The City denies the remaining allegations in Paragraph 145.

146.     The City admits that Paragraph 146 contains an excerpt from the City's 2011 Permit.  The City does not understand the meaning of the word "properly" as it is used in this allegation.  The City therefore denies the remaining allegations in Paragraph 146.

147.     The City admits that Paragraph 147 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in paragraph 147.

148.     The City admits that Paragraph 148 contains excerpts from various parts of its 2011 Permit.  The City denies that this assembled quote accurately reflects the requirements of the 2011 Permit.

149.     The City admits that Paragraph 149 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 149.

16

150.    The City admits that Paragraph 150 contains excerpts from its 2011 Permit.  The City denies the remaining allegations in Paragraph 150.

151.    The City denies the allegations in paragraph 151.

152.    The City admits that Paragraph 152 contains an excerpt from its City Code.  The City denies the remaining allegations in paragraph 152.

153.    The City admits that Paragraph 153 contains an excerpt from its City Code.  The City denies the remaining allegations in paragraph 153.

154.    The City denies the allegations in Paragraph 154.

155.    The City admits that the 2002 and 2014 Drainage Criteria Manuals address extended detention basins.  The City denies the remaining allegations in Paragraph 155.

156.    The City denies the allegations in Paragraph 156.

157.    The City denies the allegations in Paragraph 157.

158.    The City denies the allegations in Paragraph 158.

159.    The City denies the allegations in Paragraph 159.

160.    The City denies the allegations in Paragraph 160.

161.    The City denies the allegations in Paragraph 161.

162.    The City denies the allegations in Paragraph 162.

SIXTH CLAIM FOR RELIEF
(Post-Construction BMPs — Long-term Operation, Maintenance, Tracking)

163.    The responses in the foregoing paragraphs are incorporated herein by reference.

164.    The City admits that it is required to implement and enforce its approved Stormwater Management Plan under its 2011 Permit.  The City denies the remaining allegations

in Paragraph 164.

165. The City admits that Paragraph 165 contains an excerpt from the City's 2011 Permit. The City does not understand the meaning of the word "properly" as it is used in this allegation. The City therefore denies the remaining allegations in Paragraph 165.

166. The City admits that Paragraph 166 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in paragraph 166.

167. The City admits that Paragraph 167 contains combined excerpts from its 2011 Permit. The City denies the remaining allegations in Paragraph 167.

168. The City admits that Paragraph 168 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 168.

169. The City denies the allegations in Paragraph 169.

170. The City denies the allegations in Paragraph 170.

171. The City admits that Paragraph 171 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 171.

172. The City admits that Paragraph 172 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 172.

173. The City admits that Paragraph 173 contains an excerpt from the City Code. The City denies the remaining allegations in paragraph 173.

174. The City admits that Paragraph 174 contains an excerpt from the City Code. The City denies the remaining allegations in paragraph 174.

175. The City admits that Paragraph 175 contains a partial excerpt from the City Code. The City denies the remaining allegations in paragraph 175.

176.     The City denies the allegations in Paragraph 176.

177.     The City denies the allegations in Paragraph 177.

178.     The City denies the allegations in Paragraph 178.

179.     The City denies the allegations in Paragraph 179.

180.     The City denies the allegations in Paragraph 180.

181.     The City denies the allegations in Paragraph 181.

182.     The City denies the allegations in Paragraph 182.

183.     The City denies the allegations in Paragraph 183.

SEVENTH CLAIM FOR RELIEF
(Municipally-Owned Structural Controls and Facilities)

184.     The responses in the foregoing paragraphs are incorporated herein by reference.

185.     The City admits that it is required to implement and enforce its approved Stormwater Management Plan under its 2011 Permit.  The City denies the remaining allegations in Paragraph 185.

186.     The City admits that Paragraph 186 contains an excerpt from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 186.

187.     The City denies the overbroad allegations in Paragraph 187.  The City notes that the description in Paragraph 187 does not accurately describe terms in the 2011 Permit.

188.     The City admits that the 2011 Permit contains certain requirements with a deadline of October 1, 2012.  The City denies the remaining overbroad allegations in Paragraph 188.

189.     The City admits that Paragraph 189 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in paragraph 189.

190.     The City admits that Paragraph 190 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 190.

191.     The City admits that Paragraph 191 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 191.

192.     The City denies the allegations in Paragraph 192.

193.     The City admits that Paragraph 193 contains an excerpt from its 2011 MS4 permit.  The City denies the remaining allegations in Paragraph 193.

194.     The City denies the allegations in Paragraph 194.

195.     The City denies the allegations in Paragraph 195.

196.     The City denies the allegations in Paragraph 196.

197.     The City denies the allegations in Paragraph 197.

198.     The City denies the allegations in Paragraph 198.

199.     The City denies the allegations in Paragraph 199.

200.     The City denies the allegations in Paragraph 200.

201.     The City denies the allegations in Paragraph 201.

202.     The City denies the allegations in Paragraph 202.

EIGHTH CLAIM FOR RELIEF
(Construction Sites Stormwater Quality Control Plans)

203.    The responses in the foregoing paragraphs are incorporated herein by reference.

204.    The City admits that it is required to implement and enforce its approved Stormwater Management Program under its 2011 Permit. The City denies the remaining allegations in Paragraph 204.

205.    The City admits that Paragraph 205 contains an excerpt from the City's 2011 Permit. The City denies the remaining allegations in Paragraph 205.

206.    The City denies the overbroad allegations in Paragraph 206.

207.    The City admits that Paragraph 207 contains an excerpt from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 207.

208.    The City denies the allegations in Paragraph 208.

209.    The City admits that Paragraph 209 contains an excerpt from its 2011 Permit. The City denies the remaining allegations in Paragraph 209.

210.    The City admits that Paragraph 210 contains an excerpt from the City Code.   The City denies the remaining allegations in paragraph 210.

211.    The City admits that Paragraph 211 describes the City's 2014 and 2002 Drainage Criteria Manuals generally.  The City denies the remaining allegations of Paragraph 211 and denies that the descriptions in this paragraph apply as stated to this case.

212.    The City admits that Paragraph 212 describes the City's 2014 and 2002 Drainage Criteria Manuals generally.  The City denies the remaining allegations of Paragraph 212 and denies that the descriptions in this paragraph apply as stated to this case.

213.	The City admits that Paragraph 213 describes the City's 2014 and 2002 Drainage Criteria Manuals generally. The City denies the remaining allegations of Paragraph 213 and denies that the descriptions in this paragraph apply as stated to this case.

214.	The City denies the allegations in Paragraph 214.

215.	The City denies the allegations in Paragraph 215.

216.	The City denies the allegations in Paragraph 216.

217.	The City denies the allegations in Paragraph 217.

218.	The City denies the allegations in Paragraph 218.

219.	The City denies the allegations in Paragraph 219.

220.	The City denies the allegations in Paragraph 220.

## NINTH CLAIM FOR RELIEF
(Construction Sites Stormwater Quality Control Plans — Implementation)

221.	The allegations of the foregoing paragraphs are incorporated herein by reference.

222.	The City admits that it is required to implement and enforce its approved Stormwater Management Program under its 2011 Permit. The City denies the remaining allegations in Paragraph 222.

223.	The City admits that Paragraph 223 contains an excerpt from the City's 2011 Permit. The City denies the remaining allegations in Paragraph 223.

224.	The City admits that Paragraph 224 contains excerpts from the City's 2011 Permit. The City denies the remaining allegations in Paragraph 224.

225.	The City admits that Paragraph 225 contains an excerpt from the City's 2011 Permit. The City denies the remaining allegations in Paragraph 225.

226.    The City denies the allegations in Paragraph 226.

227.    The City admits that Paragraph 227 contains an excerpt from its City Code.  The City denies the remaining allegations in Paragraph 227.

228.    The City admits that Paragraph 228 describes the City's 2014 and 2002 Drainage Criteria Manuals generally.  The City denies the remaining allegations of Paragraph 228 and denies that the descriptions in this paragraph apply as stated to this case.

229.    The City denies the allegations in Paragraph 229.

230.    The City denies the allegations in Paragraph 230.

231.    The City denies the allegations in Paragraph 231.

232.    The City denies the allegations in Paragraph 232.

233.    The City denies the allegations in Paragraph 233.

TENTH CLAIM FOR RELIEF
(Construction Sites Stormwater Quality Control Plans — Enforcement)

234.    The responses in the foregoing paragraphs are incorporated herein by reference.

235.    The City admits that it is required to implement and enforce its approved Stormwater Management Program under its 2011 Permit. The City denies the remaining allegations in Paragraph 222.

236.    The City admits that Paragraph 236 contains an excerpt from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 236.

237.    The City admits that Paragraph 237 contains an excerpt from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 237.

238.     The City admits that Paragraph 238 contains excerpts from the City's 2011 Permit.  The City denies the remaining allegations in Paragraph 238.

239.     The City denies the allegations in Paragraph 239.

240.     The City admits that Paragraph 240 contains an excerpt from its City Code.  The City denies the remaining allegations in Paragraph 240.

241.     The City admits that Paragraph 241 contains an excerpt from its City Code.  The City denies the remaining allegations in Paragraph 241.

242.     The City admits that Paragraph 242 generally describes its City Code.  The City denies the remaining allegations in Paragraph 242.

243.     The City admits that Paragraph 243 describes the City's 2014 and 2002 Drainage Criteria Manuals generally. The City denies the remaining allegations of Paragraph 243 and denies that the descriptions in this paragraph apply as stated to this case.

244.     The City admits that Paragraph 244 contains excerpts from the City's 2014 and 2002 Drainage Criteria Manuals.  The City denies the remaining allegations of Paragraph 244.

245.     The City admits that Paragraph 245 describes the City's 2014 and 2002 Drainage Criteria Manuals generally.  The City denies the remaining allegations of Paragraph 245.

246.     The City admits that Paragraph 246 contains an excerpt from the City's 2014 Drainage Criteria Manual.  The City denies the remaining allegations in Paragraph 246.

247.     The City admits that Paragraph 247 generally describes the City's 2014 and 2002 Drainage Criteria Manuals.  The City denies the remaining allegations in Paragraph 247.

248.     The City admits that Paragraph 248 generally describes excerpts from the City's 2014 and 2002 Drainage Criteria Manuals.   The City denies the remaining allegations in

Paragraph 248.

249.    The City admits that Paragraph 249 generally describes excerpts from the City's 2014 Drainage Criteria Manual.   The City denies the remaining allegations in Paragraph 249.

250.    The City denies the allegations in Paragraph 250.

251.    The City denies the allegations in Paragraph 251.

252.    The City denies the allegations in Paragraph 252.

253.    The City denies the allegations in Paragraph 253.

254.    The City denies the allegations in Paragraph 254.

255.    The City denies the allegations in Paragraph 255.

Plaintiffs' prayer for relief appears after paragraph 255. To the extent the prayer requires a response, the statements and allegations contained therein are denied.

## AFFIRMATIVE DEFENSES

The City of Colorado Springs asserts the following defenses:

1.    The City asserts the following defenses concerning application of federal and state statutes of limitations to the claims in the Complaint.

a.  Federal statutes of limitations bar an award of civil penalties and an award of injunctive relief for a portion of the claims of Plaintiffs.

b.  Federal and state statutes of limitations apply differently to the United States and the State of Colorado in this case. The State of Colorado declined to enter a tolling agreement with the City in November, 2015.

c.  State statutes of limitations bar relief for a portion of the civil penalty and injunctive relief claims made by Plaintiffs in the Complaint.

2.      Injunctive relief mandating general compliance with law is improper and unavailable to Plaintiffs.

3.      An award of civil penalties in this case is improper because the City has complied with the law.  An award of civil penalties is also inappropriate because the City has greatly improved its MS4 Permit program over the past year, beginning months before Plaintiffs announced in November 2015 that Plaintiffs intended to bring this action.

4.      The City has at all times been in compliance with its MS4 permits and its state-approved stormwater programs as they have been created, reviewed and approved over time under the City's MS4 permits. The City has communicated extensively with the State of Colorado concerning its MS4 permit programs since they began in 1997.  The State has been and is fully aware of all MS4 stormwater programs of the City over this time.

5.      The City's MS4 permits in 1997 and 2004 contain requirements and conditions that differ substantially from each other and from the City's current 2011 MS4 Permit.  The City's changing stormwater programs over time reflect these permit changes.  All comply with the City's permits and the law.

6.      Under the Colorado Water Quality Control Act, the City's MS4 permits are limited by law solely to addressing requirements to protect water quality from a discharge of pollutants from the City's MS4 system to receiving state waters.  Claims asserted and relief sought by Plaintiffs improperly include activities and claims outside the City's MS4 system and the control of discharges of pollutants.  These claims are not violations of the MS4 permits held by the City and relief is unavailable to Plaintiffs.

7.      Plaintiffs' claims improperly disregard approved changes in the City's stormwater programs that authorized City stormwater activities as they were undertaken.  These stormwater program changes were approved formally and in writing by the State of Colorado over time, beginning in 1997.  An example is the "residential waiver" program of the City described in the Fourth Claim for Relief.  As a result, Plaintiffs' claims improperly assert violations of MS4 permits for activities that were lawful in all respects.

8.      The City has attained funding and staffing requirements consistently over time as required by its MS4 permits.

9.      The Four-Step Process is a set of evaluation techniques are used to decide upon water quality controls and other aspects of stormwater control.  The City has followed the "Four-Step Process," under each of its MS4 permits, in compliance with its 2002 and 2014 Drainage Criteria Manuals.

WHEREFORE, the defendants respectfully request this Court dismiss plaintiffs' complaint with prejudice, enter judgment for the defendants and such other relief as this Court deems proper.

DEMAND FOR JURY TRIAL

The City demands a trial by jury.

Dated this 9th day of January, 2017

RYLEY CARLOCK & APPLEWHITE

_s/ Richard C. Kaufman_
Alan J. Gilbert
Richard C. Kaufman
1700 Lincoln Street
Suite 3500
Denver, CO  80203
(303) 863-7500
Email: agilbert@rcalaw.com
       rkaufman@rcalaw.com

<u>**CERTIFICATE OF SERVICE**</u>

 I hereby certify that on this 9th day of January, 2017 a true and correct copy of the foregoing **ANSWER OF THE CITY OF COLORADO SPRINGS** was served via the CM-ECG system upon the following:

Heidi Hoffman Esq.
Devon Ashley Ahearn, Esq.
U.S. Department Justice, CO Environmental U.S. Division
heidi.hoffman@usdoj .gov
devn.ahearn@usdoj.gov
*Attorneys for Plaintiff United States of America*

Margaret A. Parish, Esq.
Colorado Attorney General's Office
Meg.parish@coag.gov
*Attorney for Plaintiff The State of Colorado*

Peter D. Nichols, Esq.
Carrie C. Doyle, Esq.
Melanie B. Lewis, Esq.
Leah K. Martinsson, Esq.
Megan Gutwein, Esq.
Berg Hill Greenleaf Ruscitti, LLP
pdn@bhgrlaw.com; ccd@bhgrlaw.com.
mbl@bhgrlaw.com, lkm@bhgrlaw.com; mg@bhgrlaw.com
*Attorneys for Movant, Lower Arkansas Valley Water Conservancy District*