IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02745-RPM-KMT

UNITED STATES OF AMERICA and
THE STATE OF COLORADO,

     Plaintiffs,

v.

CITY OF COLORADO SPRINGS, COLORADO,

     Defendant.

---

**JOINT SUBMISSION BY THE UNITED STATES AND THE STATE OF COLORADO
REGARDING RECENT FILINGS ON INTERVENTION**

---

The United States and the State of Colorado offer this Joint Submission to address several

issues raised in recent filings on the Motion of the Lower Arkansas Valley Water Conservancy

District ("Lower Ark District" or "District") to Intervene on Behalf of Plaintiffs. (Doc. 9). The

Plaintiffs believe that the Lower Ark District should be allowed to intervene because the District

satisfies, at the very least, the requirements for intervention as a matter of right under the Clean

Water Act ("CWA"), 33 U.S.C. § 1365(b)(1)(B), and Federal Rule of Civil Procedure 24(a).[1]

The City of Colorado Springs ("City") disagrees, and, in opposing the Lower Ark District's

Motion, makes several misstatements regarding the case and mischaracterizes the Plaintiffs'

allegations. This Joint Submission is intended to identify and correct those inaccuracies.

---

[1] The Lower Ark District presents alternative theories for intervention under Rules 24(a)(1) and
24(a)(2). (Doc. 9 at 5-15). The Plaintiffs believe that the District meets the requirements for
intervention under either theory.

## I. BACKGROUND

On November 9, 2016, the Plaintiffs filed a Complaint against the City, alleging

violations of the CWA and equivalent state laws. (Doc. 1). The Lower Ark District moved to

intervene on behalf of the Plaintiffs on December 1, 2016, seeking intervention as a matter of

right under Rule 24(a), or, alternatively, permissive intervention under Rule 24(b). (Doc. 9 at 2-

3). The Lower Ark District moves to intervene to protect its "interest and [] right to water quality

that is suitable for the normal use of the water within its boundaries." (*Id.* at 4). The District

argues that ensuring adequate water quality "for its greatest beneficial use" throughout the

Arkansas Valley depends on the City's compliance with the National Pollutant Discharge

Elimination System ("NPDES") Permit for the City's municipal separate storm sewer system

("MS4"), which is central to the Plaintiff's Complaint. (*Id.* at 14).

The Plaintiffs consented to the Lower Ark District's Motion, but the City filed a response

in opposition to the Motion on December 22, 2016. (Doc. 10). On December 30, 2016, the

Plaintiffs sought leave to file this Joint Submission to address several issues raised in the filings

related to the Motion to Intervene. (Doc. 11). The Court granted the Plaintiffs' Motion for Leave

on January 3, 2017. (Doc. 12).

## II. DISCUSSION

### A. The Lower Ark District Satisfies, at a Minimum, the Requirements to Intervene as a Matter of Right Under the CWA, Rule 24(a)(1), and Rule 24(a)(2).

Under Federal Rule of Civil Procedure 24(a), a court "must permit anyone to intervene"

if the interested party is either "given an unconditional right to intervene by a federal statute"

(Rule 24(a)(1)), or has an interest in the litigation that would be impaired or impeded absent

intervention, and that is not adequately represented by the existing parties (Rule 24(a)(2)). Fed.

R. Civ. P. 24(a). The Lower Ark District presents alternative arguments for intervention under either Rule 24(a)(1) or (2), as well as arguments for permissive intervention under Rule 24(b). The Plaintiffs believe that the District meets the requisite standards for intervention as of right under Rule 24(a)(1) and (2).

Section 505(b)(1)(B) of the CWA allows citizens to "intervene as a matter of right" where, as in this case, "the Administrator or State has commenced and is diligently prosecuting a civil . . . action in a court of the United States . . . to require compliance with the standard, limitation, or order . . . ." 33 U.S.C. § 1365(b)(1)(B). A citizen is defined under Section 505(g) of the CWA for the purposes of citizen suits as a "person or persons having an interest, which is or may be adversely affected." 33 U.S.C. § 1365(g). A "person" is defined under the CWA as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or an interstate body." 33 U.S.C. § 1362(5).

As the Lower Ark District explained in its Motion to Intervene, the District is a political subdivision of the State of Colorado and therefore a "person" under the CWA. (Doc. 9 at 3, 6 (citing 33 U.S.C. §§ 1362(5), 1365(g); Colo. Rev. Stat. § 37-45-112(7)). The Lower Ark District further explained in its Motion that it has an interest which is or may be adversely affected by the civil action of the United States and the State of Colorado to enforce the requirements of the City's MS4 Permit. In particular, the Lower Ark District has an interest in the water quality of the Arkansas River, which is directly impacted by the City's violations of its MS4 Permit. (Doc. 9 at 3, 9-13). For these reasons, the Plaintiffs agree with the Lower Ark District that it is a person and a citizen under Section 505 of the CWA and meets the requisite standards for intervention as of right under Section 505(b)(1)(B) and Rule 24(a)(1). 33 U.S.C. § 1365(b)(1)(B); Fed. R. Civ.

P. 24(a)(1). The Plaintiffs additionally agree that the District has satisfied the notice and timely filing requirements under the CWA and Rule 24. (*See* Doc. 9 at 7-8).

### 1. The Lower Ark District Has an Interest in this Case, Regardless of Its Enforcement Authority Under Colorado Law.

The City's Opposition suggests that the CWA creates only a conditional right to intervene for parties with an interest in this case, and that the Lower Ark District cannot establish the required condition because it lacks regulatory authority to enforce the City's MS4 Permit under Colorado law. (Doc. 10 at 5-7).[2] Along with ignoring the CWA's permissive language – which, as the District points out in its Reply, allows citizens to intervene as of right because they are foreclosed from initiating lawsuits that the government is diligently prosecuting (*see* Doc. 17 at 3-4) – the City also reads the CWA's use of the term "interest" too narrowly. *See* 33 U.S.C. § 1365(g). The term "interest" appears in the CWA's definition of "citizen," which is a "person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

The City advances an untenable reading of this provision by insisting that only those parties with regulatory authority to enforce the City's Permit in the State of Colorado (i.e., only the State itself) may have an interest in this case.[3] The District's Reply points to numerous

---

[2] Neither the District's nor the City's filings discuss whether the District would meet the requirement of Rule 24(b)(1)(A) for permissive intervention where there is a conditional right to intervene under a federal statute. The Plaintiffs believe that the right to intervene under CWA Section 505(b)(1)(B) is unconditional and falls under Rule 24(a)(1). If, however, the Court were to determine that the right to intervene is conditional, the Plaintiffs further believe that District would meet the requirements for permissive intervention under Rule 24(b)(1)(A) for the reasons discussed above and in the District's Motion to Intervene.

[3] In a footnote, the City seems to imply that the District may need to establish standing to seek intervention. (*See* Doc. 10 at 6 n.1). But "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.'" *San Juan County v. United States*, 503 F.3d

examples of CWA cases involving parties that intervened without regulatory enforcement

authority. (*See* Doc. 17 at 7 (collecting cases)); *see also Karr v. Hefner*, 475 F.3d 1192, 1195

(10th Cir. 2007) (noting that individual landowners and water resource owners interested in an

ongoing CWA case had a right to intervene, which they never exercised). The City's argument

lacks any citations to case law suggesting otherwise. (*See* Doc. 10 at 5-7).

The City's argument for a mechanical, technical definition of "interest" is also

inconsistent with Tenth Circuit case law addressing intervention under Rule 24(a)(2), which

provides for intervention as a matter of right if certain requirements are met – including an

interest in the subject of the litigation. In the context of Rule 24(a)(2), the Tenth Circuit has

explained that "the interest requirement is 'not a mechanical rule,'" but it instead "'requires

courts to exercise judgment based on the specific circumstances of the case.'" *United States v.*

*Albert Inv. Co.*, 585 F.3d 1386, 1392 (10th Cir. 2009) (quoting *San Juan County v. United States*,

503 F.3d 1163, 1199 (10th Cir. 2007) (en banc)). Here, the District's Motion to Intervene

explains that its interest is ensuring suitable water quality within the District's boundaries, which

is affected by waters (such as Fountain Creek) that receive the City's discharges. (Doc. 9 at 2-5;

Doc. 1 ¶ 30). Because the City's compliance with its MS4 Permit affects the quality of

downstream waters, including the Arkansas River, the Plaintiffs believe that the District has an

interest in this litigation regardless of its lack of regulatory authority to enforce the Permit.[4]

---

1163, 1172 (10th Cir. 2007) (en banc) (quoting *San Juan County. v. United States*, 420 F.3d
1197, 1206 (10th Cir. 2005)).

[4] The same reasoning extends to the City's argument regarding *E. coli.* As the District explains in
its Reply, the purpose of intervention is to facilitate adequate water quality within the District by
reducing pollutant discharges in violation of the City's MS4 Permit. (Doc. 17 at 4-5). Reducing
levels of *E. coli* by reducing the City's run-off fits within the District's broader interest in water

**2. The District's Intervention Should Not Unduly Complicate this Case.**

Although the Plaintiffs believe that the District has an unconditional right to intervene under Rule 24(a)(1), intervention should not, as the City contends, inject complicated questions about the District's water rights into this case. The rule governing intervention "is not intended to allow for the creation of whole new suits by intervenors," *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). Instead, intervenors "must take the pleadings in a case as they find them." *Id.*

The Motion to Intervene does not suggest that the District seeks to turn this case into a water rights adjudication under state law. (*See* Doc. 9). Rather, the District is interested in securing adequate water quality for waters within its borders by ensuring that the City complies with its MS4 Permit. The District's Proposed Complaint identifies specific water quality issues that were allegedly caused by the City's failure to comply with its MS4 Permit. (*See* Doc. 9-1 at 7-10 (discussing the correlation between unpermitted discharges from the City's stormwater system and high levels of *E. coli* and other water quality issues within the District)). To remedy those water quality issues, the District raises two claims for relief that are directly related to the City's compliance with its MS4 Permit: first, a violation of Permit Condition Part 1.B.3 for failing to provide adequate finances, staff, equipment, and support capability to implement the CDPS Stormwater Management Program; and second, a violation of Permit Condition Parts I.B.1.a(1) and II.A.7 for failing to adequately maintain municipally owned structural controls to reduce pollutant discharges from the City's MS4. (Doc. 9-1 at 10-18). Neither claim requires adjudicating state-law water rights.

---

quality.

For these reasons, the Plaintiffs believe that the District satisfies the requirements for

intervention as of right in this case under both Rule 24(a)(1) and (2).

**B. The City Mischaracterizes the Nature of this Case and the Scope of Its MS4 Authority.**

The United States and the State of Colorado also wish to correct several incorrect

statements and mischaracterizations in the City's Opposition filing.

**1. The City's MS4 Permit Is Unique and Flexible in Its Enforcement Authority.**

The City incorrectly states that "[t]he scope of the City's MS4 permit is quite narrow . . .

[t]he City's MS4 permit regulates *only* the discharge of any pollutants in the stormwater that is

collected in the City's city-wide system of gutters, pipes, and other conveyances and then

discharged to state waters. Colo. Rev. Stat. § 25-8-501(1) (2016) (permit requirement); 5 CCR

1002-61, Section 61.2(62) (2016) (definition of MS4 system)." (Doc. 10 at 2).

The City is wrong in two ways. First, no NPDES permit is limited solely to regulating the

discharge of pollutants into state or federal waters.[5] CWA Section 402(a) specifically provides

the EPA and state permitting authorities with a broad grant of power to impose any such

---

[5] Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), EPA may issue NPDES permits that authorize discharges of pollutants into waters of the United States, subject to conditions and limitations set forth in such permits. In 1975, EPA delegated the authority to administer the discharge permitting program to the State of Colorado, which passed the Water Quality Control Act ("WQCA") to establish the current state program. *See* 40 Fed. Reg. 16713 (Apr. 14, 1975); Colo. Rev. Stat. §§ 25-8-101 to 25-8-803. Delegation does not affect whether the Clean Water Act itself remains applicable in Colorado. 33 U.S.C. § 1342(b). In fact, the WQCA directs the State to "maintain a program which does not conflict with the provisions of the federal act," and only issue permits when the State "has determined that the provisions of this article and the federal act and regulations thereunder have been met." Colo. Rev. Stat. §§ 25-8-202(6), 25-8-503(1)(a). The State of Colorado's claims are based on the same violations as the federal claims. Indeed, the state law violations are established by precisely the same facts that prove liability under the CWA. (*See* Doc. 1).

conditions deemed appropriate to achieve the overall goals of the CWA. 33 U.S.C. § 1342(a); *Arkansas v. Oklahoma*, 503 U.S. 91, 105 (1992); *Montgomery Envtl. Coal. v. Costle*, 646 F.2d 568, 587 (D.C. Cir. 1980). Based on this authority, NPDES permits regularly include many permit conditions that are not tied directly to the discharge, including data collection and a standard requirement that permittees "properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." 40 C.F.R. § 122.41(e).

Second, Congress has established in CWA Section 402(p)(3) a unique and flexible scheme for the regulation of MS4 discharges under the NPDES permitting program. 33 U.S.C. § 1342(p)(3). Stormwater runoff is generated when precipitation from rain and snowmelt events flow over land or impervious surfaces and does not percolate into the ground. (Doc. 1 ¶ 16). As the runoff flows over land or impervious surfaces (paved streets, parking lots, and building rooftops), it accumulates debris, chemicals, sediment or other pollutants that can adversely affect water quality, erode streambanks, destroy needed habitat for fish and other aquatic life, and make it more difficult and expensive for downstream users to effectively use the water. (*Id.*). Urban development also increases the volume and speed of stormwater that is discharged, further degrading water quality in receiving waters. City of Colorado Springs Eng'g Div., *Drainage Criteria Manual Vol. 2*, at 1-2 (May 2014), https://coloradosprings.gov/sites/default/files/images/dcm_volume_2.pdf.

A MS4 is a publicly owned or operated "conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains)" that discharges to waters of the United States. 40 C.F.R.

§ 122.26(b)(8), (18)-(19). As such, MS4s are responsible for large quantities of stormwater runoff. Section 402(p) of the CWA allows regulators to ameliorate the harmful effects of stormwater discharges by controlling what enters the system through stormwater management requirements, rather than by imposing traditional effluent limitations requiring end-of-pipe treatment. 33 U.S.C. § 1342(p)(3)(B)(iii). CWA Section 402(p) authorizes EPA (and through delegation the states) to implement a comprehensive national program for addressing stormwater discharges from MS4s in a manner more flexible than the traditional NPDES permitting program. 33 U.S.C. § 1342(b) and (p). The CWA mandates that permits for discharges from MS4s "shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and other such provisions as the Administrator or the State determines appropriate for the control of such pollutants." 33 U.S.C. § 1342(p)(3)(B)(iii); *see* 40 C.F.R. § 122.26(d)(2)(iv). MS4 permits therefore may reduce stormwater runoff through provisions such as floodplain management controls, wetland protection measures, best management practices for new subdivisions, and emergency spill response programs. 40 C.F.R. § 122.26(d)(1)(v); *see also City of Abilene v. U.S. EPA*, 325 F.3d 657, 659-60 (5th Cir. 2003) (holding that CWA Section 402(p) authorizes the EPA to issue MS4 permits "that effectively prohibit the introduction of non-storm water into the MS4 and establish management practices and other methods 'to reduce the discharge of pollutants to the maximum extent practicable.'").

Contrary to the City's assertion, the scope of the City's MS4 Permit is quite broad and flexible. (Doc. 10 at 2). The City's MS4 Permit itself has enforceable provisions that are aimed at controlling what enters the system through stormwater management requirements, among

other provisions. *See, e.g.*, Permit, Part I.B.1.(a)(2). Thus, enforceable provisions of the City's

MS4 Permit are not narrow, and are not limited, as the City claims, to "*only* the discharge of any

pollutants in the stormwater that is collected in the City's city-wide system of gutters, pipes, and

other conveyances and then discharged to state waters." (Doc. 10 at 2). Moreover, there is

nothing in the Colorado statutes or regulations that contravene this fact. *See* Colo. Rev. Stat.

§ 25-8-501(1); 5 CCR 1002-61, Section 61.2(62) (2016).

### 2. The City Is Currently Violating Its MS4 Permit.

The City also mischaracterizes the nature of the enforcement action in this case,

describing it as "focus[ing] primarily upon the City's past MS4 program activities, and not upon

the City's ongoing MS4 permit program and the City's stormwater actions moving forward."

(Doc. 10 at 3). To the contrary, the Plaintiffs' 50-page Complaint seeks to remedy current and

ongoing violations of the City's MS4 Permit, among other things.

Continuing, significant violations include the City's ongoing failure to ensure that post-

construction permanent Best Management Practices ("BMPs"), such as extended detention

basins and other stormwater controls, are designed, approved, and installed in accordance with

requirements. *See, e.g.*, U.S. EPA Region 8, *CO-S000004 Colorado Springs MS4 Report Final

October 2015 with Appendices*, at 15-17, 21 (Oct. 26, 2015),

https://www.epa.gov/region8/npdes-inspection-reports-colorado-springs-ms4. Continuing,

significant violations also include the City's ongoing failure to properly operate and maintain

post-construction permanent BMPs and use ordinance or regulatory mechanisms to ensure long-

term operation and maintenance of these BMPs. *Id.* at 18-23. Additionally, the continuing,

significant violations include the City's failure to require that permanent water quality BMPs be

placed prior to stormwater runoff being discharged to State waters. *See, e.g.*, U.S. EPA Region 8, *CO-S000004 Colorado Springs MS4 Report Final February 2013 with Appendix*, at 30-31 (May 15, 2013), https://www.epa.gov/region8/npdes-inspection-reports-colorado-springs-ms4. The Complaint seeks remedies to fix these longstanding problems and ameliorate the harmful effects of stormwater discharges from the City's MS4 by controlling what enters the system through proper implementation of stormwater management requirements, among other things. (Doc. 1).

Moreover, while the City has taken a number of steps to address its stormwater program's historic deficiencies, the City has not shown that its Stormwater Implementation Plan (November 2016) addresses all, or even most, of the violations alleged by the Plaintiffs in the Complaint. [6] (*See, e.g.*, Doc. 1 ¶¶ 63-95 (Second Claim for Relief (Adoption of 2000 Cottonwood Creek [Drainage Basin Planning Study] and "Prudent Line" Concept)), ¶¶ 96-117 (Third Claim for Relief (Water Quality Control Structures Placed in State Waters)), ¶¶ 118-143 (Fourth Claim for Relief (Stormwater Controls and Water Quality Capture Volume)), ¶¶ 144-162 (Fifth Claim for Relief (Post-Construction BMPs – Design, Approval, Installation)), ¶¶ 163-183 (Sixth Claim for Relief (Post-Construction BMPs – Long-term Operation, Maintenance, Tracking)), ¶¶ 184-202 (Seventh Claim for Relief (Municipally-Owned Structural Controls and

---

[6] The City's participation in the Intergovernmental Agreement Between Pueblo County and the City of Colorado Springs and Its Utility Enterprise ("IGA") does not mean that the City is in compliance with its MS4 Permit, and the agreement specifically recognizes this fact. *Intergovernmental Agreement Between Pueblo County and the City of Colorado Springs and Its Utility Enterprise*, at 13 (Apr. 27, 2016), https://coloradosprings.gov/sites/default/files/iga.pdf. The IGA was negotiated by the City and the County of Pueblo last year to address the mitigation of stormwater flows on Fountain Creek prior to the County allowing Southern Delivery System water flows to the City. *Commissioners Secure $460M for Storm Water Control Before SDS Flows*, Pueblo County, Colo., http://county.pueblo.org/commissioners-secure-460m-stormwater-control-sds-flows-pueblo (last visited Jan. 10, 2017).

Facilities)). The remedies for these violations will be complex because they will involve

changing how the City implements its MS4 Permit, but they will be necessary in order for the

City to come to, and remain in, compliance with the law.

## III.  CONCLUSION

The Plaintiffs believe that the Lower Ark District satisfies the requirements for

intervention as of right under the CWA and Rule 24(a). The City's MS4 Permit is unique and

flexible in terms of its enforcement authority. Finally, the Plaintiffs' allegations identify both

past and present violations of the City's Permit, and the Complaint seeks rulings to remedy those

ongoing violations, among other things.

Respectfully submitted this 12th day of January, 2017.

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

*s/ Devon A. Ahearn*
DEVON A. AHEARN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-2717
Fax: (202) 514-0097
E-mail: devon.ahearn@usdoj.gov

HEIDI HOFFMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1392

Fax: (303) 844-1350
E-mail: Heidi.hoffman@usdoj.gov

FOR PLAINTIFF THE STATE OF COLORADO:

*s/ Margaret Parish*
MARGARET PARISH*
Assistant Attorney General
Natural Resources & Environment Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
Telephone: (720) 508-6265
E-mail: meg.parish@coag.gov

*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2017, a true and correct copy of the foregoing **JOINT SUBMISSION BY THE UNITED STATES AND THE STATE OF COLORADO REGARDING RECENT FILINGS ON INTERVENTION** was served via the CM/ECF system upon the following:

| | |
|---|---|
| Alan J. Gilbert<br>Richard Carl Kaufman<br>Ryley Carlock & Applewhite, P.A., Denver<br>agilbert@rcalaw.com<br>rkaufman@rcalaw.com<br>*Attorneys for Defendant, City of Colorado Springs, Colorado* | Peter David Nichols<br>Carrell Covington Doyle<br>Megan Gutwein<br>Melanie Bailey Lewis<br>Leah K. Martinsson<br>Berg Hill Greenleaf & Ruscitti, LLP, Boulder<br>pdn@bhgrlaw.com<br>ccd@bhgrlaw.com<br>mg@bhgrlaw.com<br>mbl@bhgrlaw.com<br>lkm@bhgrlaw.com<br>*Attorneys for Interested Party, Lower Arkansas Valley Water Conservancy District* |

*s/ Devon A. Ahearn*
Devon A. Ahearn